CASE 23—PETITION EQUITY—FEBRUARY 3.

# Harper v. Harper, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

ALTHOUGH A CONVEYANCE WAS INTENDED TO DEFEAT THE LAW, A COURT OF EQUITY WILL SET IT ASIDE at the instance of the grantor if a relation of confidence and trust existed between the grantor and grantee, and the grantor was induced to execute the conveyance through false alarms or fear of legal consequences excited by the grantee, the parties in such a case being *in delicto* but not *in pari delicto*.

An aged mother, being induced by her son to believe that a suit for slander was about to be instituted against her, which would result in

the loss of all her property, conveyed to her son the bulk of her es-
tate. The suit for slander was never brought, and there was no found-
ation whatever for the son's suggestion that it was about to be
brought. The grantor by this action seeks to have the conveyance
set aside. *Held*—That the relief should be granted.

FONTAINE T. FOX, JR., FOR APPELLANT.

The facts alleged in the petition, and proved, make out a case of actual
fraud. (Pomeroy's Equity Jurisprudence, vol. 2, p. 356, sec. 875.)

A conveyance executed under such circumstances as appear in this
case will be set aside at the instance of the grantor. (James v. Lang-
den, 7 B. M., 193; Thomas v. Thomas, 1 Litt., 64; Macher v. Mc-
Dowell, 4 Bibb, 473; Lemaster v. Burckhardt, 2 Bibb, 25; Taylor v.
Bradshaw, 6 Mon., 150; Watson v. Stricker, 5 Dana, 581; Pomeroy's
Equity, vol. 2, secs. 884, 885, 886, 887, 888, and 962, and note; Davis
v. Chaney, MS. Op., Ky. Ct. Ap., February 26, 1884.)

Although a conveyance may have been intended to defeat creditors,
or supposed or imaginary creditors of the grantor, it will be set aside at
his instance, if it was procured through the false representations of the
grantee, the parties in such a case not being *in pari delicto*. (Barnes
v. Brown, 82 Mich., 146; Boyd v. De La Montagnie, 73 N. Y., 498;
Holloway v. Holloway, 77 Mo., 392; Ford v. Harrington, 16 N. Y.,
285; Freelove v. Cole, 41 Barb., 325; O'Connor v. Ward, 60 Miss.,
1023; Pinkston v. Brown, 3 Jones' Equity, N. C., 494; Anderson's
Adm'r v. Meredith, 6 Ky. Law Rep.; Cook v. Colyer, 2 B. M., 72;
Davidson v. Carter, 55 Iowa, 117; Clemens v. Clemens, 28 Wis., 637.)

J. T. O'NEAL AND W. L. JACKSON, JR., FOR APPELLEES.

1. As it is not alleged that the defendant knew that the representations
made by him were false, or that they were made with the intent to
deceive, the facts alleged do not support the charge of fraud. (Ste-
vens v. Moore, 59 Maine, 559, and cases there cited.)

2. The charge of fraud is not proved, and, therefore, the deeds must be up-
held as a family settlement. (Stovall v. Barrett, 4 Litt., 207; Staple-
ton v. Stapleton, White & Tudor's Leading Cases, vol. 2, part 2, page
1156; Greer v. Greer, 9 Gratt., 332; Howe v. Howe, 99 Mass., 88.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

When the conveyances now in question were ex-
ecuted, the appellant, Harriet Harper, was a widow, and
seventy-three years of age. She then had three living
children, two of whom resided in distant States, while
her son, the appellee, Charles Harper, who was then

thirty-five years old, lived near her, and in whom at that time she appears to have had implicit confidence. She was the owner of three houses and lots in the city of Louisville. On February 21, 1881, she had her vendor convey one of them, subject to a life estate in her, to Sallie Harper, the daughter of her son, Charles Harper, with the further condition, that in the event of the grand-daughter's death without lawful issue, it should pass to a grandson, Arthur Harper, the son of Charles Harper. On September 27, 1881, she conveyed the other two lots to Charles Harper in trust, to be conveyed by him to his two children, Sallie and Arthur, when they became of age; but if either died before that time, then the survivor was to have them; or if both so died, then they were to pass to Charles Harper. She retained no estate of any character in these two lots, or any interest in the revenue arising therefrom. Upon the contrary, the deed provided that the profits thereof were to go, first, to pay taxes, insurance and necessary repairs upon the property; second, for the support and education of the two children; and any residue remaining was to be invested until their majority for their benefit. This left her with but little, if any estate, save her life interest in the lot conveyed by the first-named deed, and upon which there is a small house in which she is now residing. In fact, she is now in her old age in destitute circumstances, while her son Charles and his family are living upon the rents arising from the property covered by the trust deed. She asks that both deeds be set aside, upon the ground that their execution was procured by false representations made to her by her son, Charles Harper. The petition also substantially states,

but not in express words, that they were obtained by undue influence upon his part over her; and the answer makes this issue by expressly denying it. She avers that a considerable sum of money was stolen from her; that she accused a certain person of the offense upon information given to her by her son, the appellee, Charles Harper; that he falsely and fraudulently represented to her, and induced her to believe, that the accused party was about to sue her for slander; that it would result in the loss of all of her property, and reduce her to poverty, and thus procured her to execute the deeds, ostensibly to protect her, but in fact to obtain the estate for himself. The testimony of the appellant supports this version of the transaction; but is in direct conflict with that of her son. The wife of the latter also contradicts the appellant to some extent; but, of course, the representations might have been made without her knowledge. The attorney who prepared the trust deed testifies that it was done by the direction of the appellant, and that she understood it.

But two other witnesses testify in the case. They are disinterested. The one says that he heard the appellant say that she intended to give her property to Charles Harper's children. The other testifies that the appellee, Charles Harper, told him that his mother had charged the party with the theft; that he was afraid she would be sued for it; that he wanted to fix her property so that, in that event, a judgment could not be collected, and that this was the object of the trust deed.

This is substantially all the testimony in the case. It appears, however, that the money was not lost until July 11, 1881; and the attack upon the deed of Febru-

ary 21, 1881, appears to have been abandoned during the progress of the case. In fact, the appellant in her testimony does not seem to question it, nor is it now assailed in argument. No further notice will, therefore, be taken of it.

It is impossible to be entirely sure of the true state of case, owing to the contradictory character of the testimony. The probabilities must, therefore, be thrown into the scale. The surrounding circumstances must be considered. They favor her claim. It is difficult to suppose that the appellant would have deeded away nearly all of her property, reserving not even a life estate in it, or any of the income arising from it, and leaving her without any means of support, unless there had been some motive or impelling power driving her from competencey to poverty, stronger than her affection for her grandchildren. It occurred, too, soon after the loss of her money. No cause, sufficient in our opinion to account for it, is even hinted at in this record, save the fear of a suit for slander, and the possible consequent loss of her property. There is no testimony in the case tending to show that this belief was created in her mind in any other way than through the talk of her son to her. If it existed, as we think it did, then its creation is unaccounted for, save in this way. No suit was ever brought, and it is not shown that the party ever intended to bring any. Indeed, it was utterly unheard of, so far as this record discloses, save from the tongue of Charles Harper, but yet the old lady's mind was filled with this belief. In her imagination, poverty in her old age stared her in the face. Grim want was at her door; and in this supposed emergency she had no

one at hand to trust, or upon whose judgment she could rely, save that son, in whom not only her confidence was reposed, but an undoubting faith that he would do right by his mother.  It is urged, however, that if this be so, yet she must be turned out of court, because it was an effort to defeat the law to which she was a party.  *Inter partes in pari delicto, potior est conditio defendentis.*

It is true that in cases of executed contracts, if the parties be *in pari delicto*, they will be left where they have placed themselves.  They do not come into court with clean hands.  If, however, one party is but an instrument in the hands of the other, then they are not *in pari delicto*.  Judge Story says : "One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age, so that his guilt may be far less in degree than that of his associate in the offense."  In such a case they are, perhaps, *in delicto*, but not *in pari delicto*.  The act may, indeed, be substantially that of the one party.  Thus the law forbids the payment of usury ; but if the borrower seeks equity for relief, it will be afforded ; or if he has paid it, he may recover it back.  The rule *particeps criminis* does not apply.  He is not *in pari delicto*.  He is the slave of the lender—is *in vinculis ;* and must submit to his necessities.

A court of equity will interpose, and set aside an instrument as between the parties to it, although it was intended to defeat the law, if the parties did not stand upon an equal footing, and if the one influenced and controlled the conduct of the other ; and when a relation of trust and confidence exists, the party in whom it is reposed and who has obtained a benefit, should show

an undoubted right to it.  The *onus* is upon him to make it appear that the transaction was fair and proper; and relief will not be denied to the one least in fault, if he has been led into it in violation of confidence and by exciting false alarms or fear of legal consequences.  If the mind of one of the participants in the transaction exercises an undue influence over that of the other, whether by imposition or threats upon the one side, and confidence or weakness upon the other, equity will grant relief to the latter.  Even if the party had sufficient capacity to contract, yet if, through trusting confidence, the other has led him into the illegal act, and then imposed upon him, such relief will not be refused.

In Osborne v. Williams, 18 Ves., 382, a father and son entered into a contract in violation of a statute.  It had been executed by the son, and the father had derived a benefit therefrom.  Both parties having died, the representatives of the son sued those of the father for an account, and relief was granted upon the ground that while the parties were *in delicto*, yet they were not *in pari delicto*.

In Pinkston v. Brown, 3 Jones' Equity, 494, a mother, upon the advice of her son, executed a deed of trust for the payment of her debts, but which left out one of her creditors, and secured several fictitious notes executed to the son, in whom she had implicit confidence ; she having paid all of the *bona fide* indebtedness, the deed of trust was vacated at her instance, the court saying that "the mother and son were *in delicto*, but not *in pari delicto*."

See also the cases of Boyd v. De La Montaigne, 73 N. Y., 498 ; Barnes v. Brown, 32 Mich., 146 ; O'Conner v.

Harper v. Harper, &c.

Ward, 60 Miss., 1025; Freelove v. Cole, 41 Barb., 318, and Anderson v. Meredith, 82 Ky., 564, where it is held that if the mind of one of the actors in a fraud exercises an undue dominion over that of the other by reason either of physical or intellectual weakness, or from a confidence admitting of imposition, then the general rule that equity will not aid either party to it does not apply.

In the case now presented, the parties did not stand upon an equal footing. They were not dealing at arms' length. The son had the confidence of his widowed mother. Such a relation existed as gave him special power over her; but the filial love due to her seems to have cringed to self-interest, and he is found practicing on the weakness and confidence of his aged mother. She was not in debt; no creditor was to be defrauded; and under the circumstances, the deed must be regarded as the creature of the false alarm of legal consequences in her mind, but of which he was the author, and is, therefore, his act, rather than that of the mother.

Judgment reversed, with directions to render a judgment annulling the deed of September 27, 1881, and directing a re-conveyance to the appellant of the property described in it, and for further proceedings in harmony with this opinion.