BROBSTON, receiver, *v.* PENNIMAN.

1. Where the president and cashier of a bank, being also members of a partnership composed of themselves and another person, to the capital stock of which they had, under the partnership articles, agreed to contribute a given sum, without the knowledge or consent of that person executed and delivered to the bank a promissory note in the name of the partnership for the purpose of raising the money they had so agreed to put into the partnership business, although the money obtained from the bank upon such note was in fact used for the purpose stated, the transaction was one for the private benefit alone of the two members of the partnership who thus raised the money, and in no sense for the benefit of the partnership itself.
2. Under these circumstances, the knowledge of the president and cashier of the facts above mentioned was the knowledge of the bank itself; and neither the partnership, as such, nor the remaining member, was liable to the bank upon the note in question.

December 2, 1895.

Complaint on note. Before Judge Sweat. Glynn superior court. May term, 1895.

*Goodyear & Kay*, for plaintiff. *Johnson & Krauss* and *Harrison & Peeples*, for defendant.

LUMPKIN, Justice.

An agreement for the formation of a partnership under the name and style of the "Union Warehouse & Commission Company" was entered into between Mrs. Penniman, Charles B. Lloyd and Frank E. Cunningham, by the terms

of which Mrs. Penniman was to convey twenty-five acres of land to the firm, and Cunningham and Lloyd were each to contribute to it the sum of $2,500 in cash. Lloyd was president, and Cunningham cashier, of the Brunswick State Bank. In order to raise the $5,000 which they were to pay into the partnership, they, without the knowledge or consent of Mrs. Penniman, borrowed that sum from the bank and gave for it a note executed in the partnership name. Mrs. Penniman conveyed to the partnership the twenty-five acres of land in accordance with her agreement. Afterwards, an action upon the $5,000 note was brought by Brobston, as receiver of the bank, against the partnership; and the question presented for determination is, whether it is liable upon the note. If it is, it would of course follow that Mrs. Penniman would be liable also.

We have no difficulty whatever in holding that the plaintiff was not entitled to a recovery in this case. It was the duty of Lloyd and Cunningham to raise, on their own account, the money which they had agreed to contribute to the partnership business. It is perfectly obvious that the partnership itself had no immediate concern in this matter, it not being in any sense a transaction for its benefit, but one exclusively for the benefit of the two members who contracted for the loan. The debt created by the giving of the note was not a partnership debt, and therefore, upon general principles, it should not be made liable for its payment. It was insisted, however, that as the note was executed by a member of the firm who had authority, as a partner, to make and deliver notes in the partnership name, the bank ought to be protected, because it in good faith advanced its money upon the note in ignorance of the fact that the note was not really given to raise money for the partnership, but for the private benefit of two of its members to enable them to meet their obligations to it in accordance with their agreement with Mrs. Penniman. If this proposition had any foundation in

truth, the position of the plaintiff would be unanswerable; but it is perfectly clear, from the facts recited, that the truth of the matter was fully known to the bank, and therefore it does not occupy the position claimed for it. Lloyd and Cunningham represented the bank in making the loan and taking the note. Lloyd was its *alter ego*, and Cunningham its special agent for the purpose of negotiating loans. It was within the immediate scope of their business and authority, as the representatives of the bank, to make just such transactions as the one in question; and it follows beyond doubt that whatever they actually knew with reference to this transaction while engaged in the very act of making it, must be chargeable to the bank itself. If this is not so, it is quite difficult to conceive of a case in which the doctrine of constructive notice can have application. If the knowledge of Lloyd and Cunningham was not, in this case, the knowledge of the bank they represented, we do not see how it would be possible for a bank to ever know anything. The only way in which a corporation can have knowledge of a fact is through an officer or an agent. It has not, otherwise, eyes to see, ears to hear, or intellect with which to comprehend. Unless it be true that Lloyd and Cunningham were to see, hear and understand for the bank, it was blind, deaf, and without mind. It may be true that the conduct of these officials was a fraud upon and a wrong to the bank whose interests were in their keeping. If so, it had its remedy against them; but neither in law nor in justice can it hold the partnership accountable for what they did.

Although we do not regard citation of authority necessary to support the decision rendered in the case now in hand, the following cases may be found helpful to those desiring to find the correct solution of similar questions arising in cases more involved in perplexity because of their peculiar facts and circumstances. In Traders'

v 97-34

National Bank *v.* Smith, 22 S. W. Rep. 1056, it was held that: "Where plaintiff bank's president and manager purchased from a corporation of which he was also a stockholder and director a note given to the corporation pursuant to a contract to which he, as such director, was a party, plaintiff is chargeable with notice of the conditions under which the note was given." Justice Head, who delivered the opinion of the court in that case, cites many authorities bearing upon the subject. In Holden *v.* New York & Erie Bank, 72 N. Y. 286, the bank was held chargeable with the knowledge of its president who, as executor of the estate of a deceased person, entered into negotiations with the bank by which the estate was defrauded. So, in another New York case, it was held that the bank was chargeable with the knowledge of its cashier, who was also the treasurer of the plaintiff, as to the true ownership of certain securities which he had pledged to secure a loan for the bank. Fishkill Savings Institute *v.* Bostwick *et al.*, 19 Hun, 354. In Waynesville National Bank *v.* Irons, 8 Fed. Rep. 1, it appeared that the bank's president was also the president of a railway company, which was the original payee of a note discounted by the bank; and it was held that if the bank's president had knowledge of the agreement under which the note was given to the railway company, such knowledge would be constructive notice to the bank itself. "The fraud of a bank president in contriving and negotiating in his bank fraudulent notes of a corporation, for his own use, imputes knowledge to the bank, and it has no claim against the corporation." *In re* Millward-Cliff Cracker Co. (Pa.), 28 Atl. Rep. 1072.

These cases all proceed upon the idea that, as a corporation must of necessity entrust its affairs to officers and agents, and can transact business only through their agency, it must be held chargeable with their acts while in the performance of their duty to it; and if its duly selected ser-

vants prove unfaithful to their trust, the corporation itself must suffer, rather than innocent third persons.   Surely, as against such persons, a corporation cannot claim the benefits arising from any contract made in its behalf through its officers, when these officers knew that the contract would operate as a fraud upon others, but nevertheless participated in or connived at the fraudulent transaction.   The corporation would be bound either to repudiate entirely, or adopt unconditionally and without reservation, the acts of its agents in negotiating for and perfecting the contract made in its behalf—it could not elect to ratify and adopt such of the acts and conduct of its agents as operated beneficially to it, and repudiate such conduct (active or passive) as would constitute a fraud upon the parties sought to be charged with the contract. To hold, in the present case, that the plaintiff was entitled to recover upon the note held by the bank, would be to allow the plaintiff to assume such an anomalous position. See also *Guarantee Co. of N. A.* v. *East Rome Town Co.,* 96 *Ga.* 511.                                 *Judgment affirmed.*