## HODGES *v.* CITIZENS BANK OF SYLVANIA.

1. There is no merit in the motion to dismiss the bill of exceptions on the ground that there is no sufficiently definite assignment of error.

2. Where the fears or affections of a mother and a father for their son and fears of the son are wrought upon through criminal proceedings instituted against him, and the mother, father, and son are induced thereby against their will to convey property to pay an alleged shortage of the son in order to avoid prosecution, there is duress upon the parties so acting; and it is competent in an action by the prosecutor to recover the land, based on title derived through deeds executed by such parties as a result of the duress, for them, by way of equitable defense, to set up the duress and have cancellation of the deeds.

APRIL 10, 1917.

Complaint for land. Before Judge Summerall. Effingham superior court. April 17, 1916.

The Citizens Bank of Sylvania instituted an action of complaint for land against F. O. Hodges and his wife, Mrs. Nora Hodges, and E. F. Hodges, their son, to recover two tracts of land, one containing 60 acres, more or less, and the other 101 acres, more or less. The abstract of title attached to the petition showed that the plaintiff claimed title to the 60-acre tract under a deed dated November 4, 1913, executed by Mrs. Hodges to E. F. Hodges; and a security deed bearing the same date, executed by E. F. Hodges to the plaintiff; and a deed executed by the plaintiff to itself under a power of sale contained in the security deed above mentioned. The abstract showed that with respect to the second lot the plaintiff claimed under a security deed executed by F. O. Hodges to the plaintiff, dated November 4, 1913; and a deed by the plaintiff to itself, executed in pursuance of a power of sale expressed in the last-mentioned deed. The defendants by their answer admitted the execution of these deeds, and set up the following as an equitable defense: "8. That at the time said deeds was executed by Nora Hodges to E. F. Hodges, and the deed to secure debt was

executed by F. O. Hodges and E. F. Hodges to said plaintiffs, W. J. Walker was the president of the said Citizens Bank of Sylvania and was also the president of the Newington Mercantile Company and had active charge and management of both corporations. 9. That said Citizens Bank of Sylvania established a branch bank at Newington in the same building that the business of the Newington Mercantile Company was conducted. 10. That said W. J. Walker employed Elliott F. Hodges, one of said defendants, as the cashier of said branch bank and also as manager of said Newington Mercantile Company; and the said E. F. Hodges received his instructions and orders as to the management of said bank and said mercantile business from said W. J. Walker, the president of both corporations. 11. That in the fall of 1913 the said W. J. Walker, president as aforesaid, came to the said E. F. Hodges and told the said E. F. Hodges that he, the said E. F. Hodges, was short some seven thousand dollars with the said Newington Mercantile Company and that unless he made said shortage good by the next morning, he, the said W. J. Walker, would have him, the said E. F. Hodges, arrested for larceny and embezzlement. 12. That said E. F. Hodges, defendant, was not short with said company and had not appropriated any of the goods or money of said company to his own use, and refused to make said alleged shortage good. 13. That on the following day after said W. J. Walker, president as aforesaid, threatened to have said E. F. Hodges arrested, the said W. J. Walker took out a warrant for said E. F. Hodges and had him, the said E. F. Hodges, arrested for larceny and embezzlement of the funds of the Newington Mercantile Company. 14. That the hearing on said warrant or preliminary was waived by said E. F. Hodges, and he gave bond in the sum of five thousand dollars for his appearance at the next term of the superior court of Screven county to answer to any charges preferred against him for said alleged offense, J. J. Tullis, L. Hodges, and F. O. Hodges signing said bond. 15. That after said bond had been given and before the said term of Screven superior court, the plaintiffs by their president, W. J. Walker, circulated rumors and reports that said E. F. Hodges was guilty of embezzlement, and that unless he settled and made good said shortage he would prosecute and put him in the penitentiary. 16. That the said W. J. Walker, president of said Citizens Bank of

Sylvania and of said Newington Mercantile Company, first demanded of said Elliott F. Hodges the sum of $7200.00, which he refused to pay; and after the said E. F. Hodges gave bond and before the superior court convened, the said plaintiffs by their president, W. J. Walker, told L. Hodges, an uncle of E. F. Hodges, and told F. O. Hodges, father of E. F. Hodges, that if he would settle for $5000.00, and that if they would pay cash, he would settle for less than that sum. 17. That E. F. Hodges was a young man without experience in the affairs of life, and F. O. Hodges was a farmer and knew nothing of legal matters, and Nora Hodges was untrained except in her household duties and ignorant of business affairs. 18. That rumors were then circulated that said bond given by E. F. Hodges was not good and that he would be put in jail, and then the plaintiffs by W. J. Walker, president as aforesaid, came again, and, while E. F. Hodges was in the custody of the law and deprived of his liberty and was in duress, proposed to defendants that if he, F. O. Hodges, and E. F. Hodges would give their notes for said shortage to the amount of $5000.00 and that if he, the said F. O. Hodges, would secure the payment of said notes with a deed to secure debt on his farm, and that if Nora Hodges, the mother of E. F. Hodges, would deed to her son, E. F. Hodges, a certain tract of land she owned, and E. F. Hodges then give plaintiffs a deed to secure debt on said lands, that he, W. J. Walker, president as aforesaid, would settle said criminal prosecution with said E. F. Hodges and the same would be dismissed and ended. 19. That, acting on the fears produced by the duress of their said son, the said Nora Hodges and the said F. O. Hodges, for the sole purpose of obtaining the release of their said son and in order that he might regain his liberty, consented to make said deeds. 20. That the said plaintiffs by W. J. Walker, president as aforesaid, had all of said defendants to go to Sylvania in Screven county and there had E. F. Hodges and F. O. Hodges sign said note for $5000.00. 21. That said plaintiffs by W. J. Walker, president as aforesaid, had Nora Hodges to deed to her son, E. F. Hodges, sixty-eight acres of land owned by her, for an alleged consideration of $500.00, when in fact no cash consideration was paid. 22. That the said plaintiffs by W. J. Walker, president as aforesaid, then had F. O. Hodges make a joint deed to secure debt to plaintiffs, covering the lands owned by F. O. Hodges and the

tract deeded E. F. Hodges by his mother, Nora Hodges. 23. That at the time F. O. Hodges made and signed the said deed to her son, they were both moved to do so because the plaintiffs, by W. J. Walker, president as aforesaid, had their son arrested and deprived of his liberty and was holding him in duress, and said deeds were made by them and signed said deeds to secure the release of their said son, and the said E. F. Hodges signed said deed while he was in duress and for the sole purpose of obtaining his release and regaining his liberty. 24. That the time said defendants at the instance of plaintiffs' president, W. J. Walker, went to Sylvania and was induced by him to sign said note and security deed, the said W. J. Walker, president as aforesaid, told defendants that he could not have the bank's regular attorneys to draw said note and deeds but that he would get some other lawyer to do so and did get an outside attorney to draw said papers."

Upon the allegations just quoted the defendants prayed that each of the deeds executed by them, upon which the plaintiff based its claim of title, be canceled and set aside as void, and the defendants be discharged, etc. Upon oral motion the court struck the plea; and, there being left no denial of the allegations of the petition, directed a verdict in favor of the plaintiff for the land, and entered judgment thereon. The defendants by direct bill of exceptions assigned error upon each of these rulings.

*J. Hartridge Smith,* for plaintiffs in error.

*John Bell, White & Lovett,* and *E. S. Elliott,* contra.

ATKINSON, J. 1. A motion was made to dismiss the bill of exceptions, on the ground that it did not contain any valid assignment of error. The ground of attack made upon the assignments of error was that they were too indefinite to present any question for consideration. The bill of exceptions alleged that the plaintiff made an oral motion to strike the plea and answer filed in the case, "on the grounds that the same was insufficient in law and did not set up any legal defense; which motion after argument was sustained by the court and an order passed sustaining said motion and striking said plea and answer, and to this ruling plaintiffs in error (defendants in the trial court) excepted, now excepts, and assigns the same as error upon the grounds that the said ruling was contrary to law." After this assignment of error the bill of exceptions also made a general as-

signment of error to the direction of the verdict and the entering of a decree thereon, "upon the grounds that the same was contrary to law." It appears from the foregoing that the plaintiff in error made a specific assignment of error upon the judgment striking the plea, upon the ground that the judgment striking the plea was contrary to law. See *McGregor* v. *Third National Bank of Atlanta,* 124 *Ga.* 557 (53 S. E. 93); *Melson* v. *Thornton,* 113 *Ga.* 99 (38 S. E. 342). The judgment dismissing the plea preceded the final judgment, and there was a general assignment of error upon the final decree. This is sufficient to authorize a consideration of the assignment of error based upon the judgment striking the plea, the effect of which was to deprive the plaintiffs in error of the equitable defense which they sought to make. *Lyndon* v. *Ga. Ry. &c. Co.,* 129 *Ga.* 353 (58 S. E. 1047). Accordingly the motion to dismiss the bill of exceptions will be overruled.

2. The case presented by this record, on the controlling point, is very similar to *Jordan* v. *Beecher,* 143 *Ga.* 143 (84 S. E. 549, L. R. A. 1915D, 1122). In that case it was said: "The case presented by this record is not one for the enforcement of an executed contract, but for the cancellation of deeds executed under duress of imprisonment. Our Civil Code (1910), § 4255, declares: 'The free assent of the parties being essential to a valid contract, duress, either of imprisonment or by threats, or other acts, by which the free will of the party is restrained and his consent induced, will void the contract. Legal imprisonment, if not used for illegal purposes, is not duress.' 'Duress' as defined by the Civil Code (1910), § 4116, 'consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will.'" After discussing the facts of the case and noting a number of authorities, the opinion proceeded: "Where parties enter into an agreement seeking to stifle a criminal prosecution, the parties are in pari delicto, and the law refuses to aid either of them against the other. That rule applies where the nature of the undertakings and stipulations of each, if considered by themselves alone, would show the parties equally in fault; but where the incidental circumstances, such as imposition, oppression, duress, undue influence, taking advantage of necessi-

ties or weaknesses, and the like, are used as a means of inducing the party to enter into the agreement, the law will not deem the party influenced by such circumstances as being in pari delicto, so as to deny him any relief from the contract infected with illegality. 2 Pomeroy's Eq. Jur. § 942. Where the fears or affections of a wife are worked upon through criminal proceedings instituted against her husband, and she is induced thereby, against her will, to convey her property to pay his debt and obtain his release from prison, there is duress as to her, even though the debt may be valid, and the prosecution be for a crime which has in fact been committed by the husband." The principles announced in that case are applicable to the facts of the present one. The plea distinctly alleged that the plaintiff, the Citizens Bank of Sylvania, acting by and through its president, first accused the younger defendant with the offense of embezzling the funds of the other corporation, and on the following day caused a warrant to be issued upon which he was arrested, and, after he had been released on bond, persisted in proclaiming that he was guilty of the offense, that the bond was insufficient, and that he would be put in jail; and thereby induced the defendants, by threats, to execute the deed for the purpose of avoiding criminal prosecution, when as a matter of fact the accused was not a defaulter. The younger defendant was the son of the other two, and the acts above mentioned constituted duress with reference to him, and, under the principles announced in the case cited above, amounted to duress with reference to them. Under this view, it was erroneous to strike the plea upon oral motion, and to direct a verdict for the plaintiff.

*Judgment reversed. All the Justices concur.*