## HABERSHAM BANK *v.* MERRITT.

1. Under the evidence in the case the jury were authorized to find that the note sued upon and the security sought to be foreclosed were executed under such duress as to render them void in the hands of any one partic-ipating in the acts constituting the duress or cognizant thereof.

2. A corporation is not to be charged with notice of facts of which its vice-president acquires knowledge while dealing in his private capacity and in his own behalf with third persons; nor is knowledge on his part thus acquired imputable to the corporation, when, acting through another official, it deals with him at arm's length as with any other individual representing himself alone.

3. The exception to a charge of the court touching the effect of duress upon the validity of the note and security deed to enforce which the present suit was brought, on the ground that the court did not in that connec-tion state to the jury that the owner and holder of the note would not be affected by the fact of duress unless he had knowledge cr notice of it, is without merit in view of the instructions upon that subject in another part of the charge.

4. A portion of the charge excepted to in one ground of the motion is a mere fragment of a sentence, which does not state any principle or rule of law; and for that reason the exception is without merit.

No. 3730.   FEBRUARY 27, 1924.

Mortgage foreclosure.   Before Judge J. B. Jones.   White superior court.   March 16, 1923.

*I. H. Sutton,* for plaintiff.

*Charters, Wheeler & Lilly,* for defendant.

BECK, P. J.   The Habersham Bank brought suit against Mrs. M. A. Merritt upon a promissory note, and prayed that the judgment thereon should be a special lien upon land conveyed by a deed to secure the payment of the note.   The defendant admitted the execution of the note and deed, and that the bank was the owner and holder of the note; but pleaded that the note and deed were executed under duress; that she was at Cornelia, Habersham County, Georgia, visiting her daughter, who was quite ill; that on her arrival at Cornelia, Hamilton Kimsey, Esq., an attorney at law, came to her and represented to her that her son-in-law, Maxwell, was short in his accounts as postmaster at Cornelia; that she went to the office of Kimsey, where the note and deed were prepared for her signature; that defendant being herself sick and worried over the condition of her daughter, and upon representations by Kimsey that it was necessary for defendant to execute the note and deed in order to prevent the arrest and imprisonment of her son-in-law on the alleged charge of embezzlement as postmaster, she signed the note and deed; that the consideration of the note is illegal, and the note and deed are void for that reason, that Robinson was the vice-president of the Habersham Bank, and was one of the sureties on the bond of Maxwell as postmaster; and that the defendant's daughter, the wife of Maxwell, was in such a condition that his arrest and incarceration would put in jeopardy her health and life.   There were other pleas, but only the issue of duress was submitted by the court in his charge to the jury.   The jury trying the case returned a verdict for the defendant; and the plaintiff made a motion for new trial, which was overruled.

1.   The plaintiff contends and insists that under no view of the evidence were the jury authorized to find that the execution of the note and deed were procured by duress.   "The free assent of the parties being essential to a valid contract, duress, either of imprisonment or by threats, or other arts, by which the free will of the party

is restrained and his consent induced, will void the contract. Legal imprisonment, if not used for illegal purposes, is not duress." Civil Code, § 4255. "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." Civil Code, § 4116. We are of the opinion that, under the application of the plain terms of the code sections quoted to the facts of the case as developed by the evidence, the jury were authorized to find that the execution of the note and deed had been procured by duress. There was evidence from which the jury were authorized to find that an attorney at law went to Mrs. Merritt, the maker of the note, and stated to her that her son-in-law, Maxwell, who was postmaster at Cornelia, had been checked up by an official of the Post-Office Department and found short in his accounts some $2100. She was given to understand that his arrest and incarceration would follow unless the amount was paid, and that in order to raise an adequate amount for this purpose it was necessary that the sum of $1170 at once be raised. Efforts were made to borrow this money from banks at Cornelia, but they were futile. Mr. J. A. Robinson was in town. He was vice-president of the Habersham Bank, and was also one of the sureties on the bond of Maxwell as postmaster. After a conversation between Mr. Kimsey and Mr. Robinson, in which certain features of the matter were discussed, Mr. Robinson said he thought that if a good note could be made the money could be procured from the Habersham Bank. Kimsey testified that he was representing Maxwell, and not Robinson and the Habersham Bank. Mr. Robinson himself testified in part as follows: "I don't think I was present when that note and deed were signed by Mrs. Merritt. I did not have Hamilton Kimsey employed to represent me in that transaction or in any way at that time. I think Mr. Kimsey came down there to see me, and then came to see me when Mrs. Meritt said something about wanting more time—that's what I understand; she didn't talk about it to me, and I think I told him I guessed it would be all right to give them a little more time. I had had no talk or communication with either Harry Maxwell or Mrs. Merritt in this matter; and Hamilton Kimsey sent for me the first time I had any talk with him about this matter. When he first talked to me, I don't remember all that was said—wasn't

very much said; he came to see me and asked if the Habersham Bank would let him have the money, and I told him if he would make a good paper, I thought so—that the bank would let Mrs. Merritt have the money if she could make a good paper. I did not accept that note and deed to the Habersham Bank. I did not tell Hamilton Kimsey or anybody else that I would accept that loan for Habersham Bank, and I did not accept it. I did not help enact any scheme to help Hamilton Kimsey get the money and pay Harry Maxwell out of the post-office trouble. I had nothing to do with the negotiations about getting this money for him or Mrs. Merritt. Hamilton Kimsey did not represent me. I had no talk with Mrs. Merritt at all. I was on Harry Maxwell's bond with J. T. Peyton and Vance Perkins. When these papers were executed, I think Mr. Kimsey gave them to me and I carried them to Habersham Bank and gave them to Mr. Reeves that night or the same afternoon, and he just opened them and looked at them, and I told him I would like for him to use them if he could—that I would like for the bank to make the loan if he thought it was all right; and I told him to find out from Mr. Kimsey about the loan. I told him to call Hamilton Kimsey or Ed Barr and ask them about the security. I was not authorized to make loans for the Habersham Bank. Mr. Reeves, the cashier of the bank, was the one authorized to make loans for Habersham Bank. I didn't even tell Mr. Reeves what this loan was for. That's all that was said about it before that time. Later on I signed a note to Habersham Bank with Vance Perkins and J. T. Peyton. Mr. Reeves asked us to do that. When these papers were executed on February 12, 1921, I expect I was vice-president of Habersham Bank and a director of the bank. Don't know whether or not I was on the loan committee. I have been on it for some time and am now, have been for two or three years, for more than a year. I guess I was on the loan committee at the time this note was given. . . I knew all about the circumstances, and had an idea about what the money was being borrowed for."

Regardless of the question as to whether Kimsey as an attorney at law represented Maxwell or Robinson, it is clear that the jury were authorized to find that Mrs. Merritt signed the papers in question under the fear that her son-in-law would be arrested and incarcerated; and from the testimony of Mrs. Merritt they would be authorized to find that she signed the note under the compulsion aris-

ing from the fact that the son-in-law would be arrested and his arrest and incarceration would be such a shock to her daughter, in her delicate state of health, as would further endanger her health, if not her life. In the case of *Jordan* v. *Beecher,* 143 *Ga.* 143 (84 S. E. 549, L. R. A. 1915D, 1122), it was said: "Where the fears or affections of a wife are worked upon through criminal proceedings instituted against her husband, and she is induced thereby, against her will, to convey her property to pay his debt and obtain his release from prison, there is duress as to her, even though the debt may be valid, and the prosecution be for a crime which has in fact been committed by the husband. Giddings v. Iowa Sav. Bk., 104 Iowa, 676 (74 N. W. 21); Eadie v. Slimmon, 26 N. Y. 9 (82 Am. D. 395); Harper v. Harper, 85 Ky. 160 (3 S. W. 5, 7 Am. St. R. 583); Adams v. Irving National Bank, 116 N. Y. 606 (23 N. E. 7, 6 L. R. A. 491, 15 Am. St. R. 447); *Southern Express Co.* v. *Duffey,* 48 *Ga.* 358. In the last-named case a mother made a deed to procure the release of her son from arrest under a criminal warrant. The purported consideration of the deed was claimed to represent money embezzled by the son. It was in proof that the son was under arrest and in chains, and the grantee in the deed agreed to release the son and stop the proceedings, though he expressly refused to settle the prosecution, stating that he could not control the public officials. The son was released and the prosecution stopped; and it was held that the deed from the mother was illegal and void. In the opinion McCay, J., said: 'If the agreement to release a man under arrest and stop that proceeding is not an attempt to suppress a prosecution, we are at a loss to put a state of facts that does make a case within the rule. If this arrest was illegal, if the agents of the express company had this boy in their own custody, and could let him go or not at their pleasure, then this deed was the clear result of duress, since it was made to release the child of the grantor from illegal imprisonment. A man's child stands, under the law, in the same situation as himself in such cases.' It follows that if the deeds from Mrs. Beecher to her husband and from him to his creditor were obtained in the manner as claimed by the defendants, they would be void as against the grantee, or a purchaser from him with notice." In the case of *Colclough* v. *Bank of Penfield,* 150 *Ga.* 316 (103 S. E. 489), it was held: "If the fears or affections of a father for his son are wrought upon by threats of a criminal prosecution of the son,

and the father is thereby induced and coerced, against his will, to execute his promissory note and a security deed to land in order to prevent such threatened prosecution, there is duress as to the father, even though the threatened prosecution be for a crime which has been committed by the son; and such instruments are void, and may be canceled in a proper proceeding at the instance of the maker. In such a case the rule does not apply that if parties voluntarily enter into a contract to suppress a criminal prosecution they are in pari delicto, and neither a court of law nor equity will interpose to give relief to either party. Civil Code, §§ 4116, 4255; *Jordan* v. *Beecher,* 143 *Ga.* 143 (84 S. E. 549, L. R. A. 1915D, 1122) ; *Hodges* v. *Citizens Bank of Sylvania,* 146 *Ga.* 624 (92 S. E. 49) ; Williamson-Halsell-Frazier Co. *v.* Ackerman, 77 Kan. 502 (94 Pac. 807, 20 L. R. A. (N. S.) 484)."

The brief summary which we have given of a part of the evidence and the extracts from the testimony of two of the witnesses are sufficient to show, when considered in the light of the authorities quoted and referred to, that the jury were authorized to find that the defendant in this case executed the note and deed in question under such duress as to render the consideration of the contract illegal and the contract void.

2. But this duress would not render the evidence of the debt unenforceable in the hands of the plaintiff bank, unless it had notice, actual or constructive, of the acts amounting to duress; and here we think the maker of the note and deed failed in her defense. No notice of the duress which she claimed was used in procuring her signature to the instruments in question was carried to the plaintiff, the bank. It is true that it appears from the evidence that J. A. Robinson was vice-president of the bank and "a member of the loan committee." It is not shown what functions the loan committee performed, though we may infer its duties from the usual meaning of the expression. But Mr. Reeves was the cashier of the bank and had sole control of loans under the amount of $2500. Mr. Robinson carried the note and deed to Mr. Reeves at the bank. According to the testimony of Mr. Robinson himself, he carried the note and deed to the Habersham Bank and gave them to Mr. Reeves the cashier, that night or that afternoon. The latter opened them and looked at them, and Robinson said to him that he would like for him to use them if he could—that he would like for the bank to make the

loan if he thought it was all right. "I was not authorized to make loans for the Habersham Bank. Mr. Reeves, the cashier of the Habersham Bank, was the one authorized to make loans for Habersham Bank." He further testified that he did not even tell Mr. Reeves what the loan was for. Mr. Reeves testified postively, that the first knowledge that he had of the deed and note was when Mr. Robinson came to the bank and handed him the paper, merely remarking that he would like for the bank to handle the paper, if he thought it was good; that the next day he called up Mr. Kimsey and talked with him about the note and asked whether it was good, and the latter stated that it was a safe loan and the paper good; that there was no other information than this about the papers; that he drew a draft for the money and paid the draft when it came in; that Robinson had no authority to make or accept loans for the Habersham Bank, that he alone had authority to make and accept loans up to $2500.

When we consider further that J. A. Robinson, the vice-president of the bank, was a surety on the bond of Maxwell, the postmaster, and liable to make good the amount of his shortage, we cannot escape the conclusion that when he acquired the knowledge of the facts that affected the validity of the note and security deed he was acting in his individual capacity for the protection of his own interest. And where one who is an officer of a bank and engages in a transaction like this,—without imputing to him any wrong intention, he must be regarded as one who is taking care of his own interest and acting to protect his financial welfare, and in his dealings with the bank in procuring the money on the note and security he was acting for himself and at arm's length with the bank. In the case of *Peoples Bank* v. *Exchange Bank,* 116 *Ga.* 820 (43 S. E. 269, 94 Am. St. R. 144), it was said: "A corporation is not to be charged with notice of facts of which its president acquires knowledge while dealing in his capacity and in his own behalf with third persons; nor is knowledge on his part thus acquired imputable to the corporation when, acting through another official, it deals with him at arm's length as with any other individual representing himself alone." In the case of *Union City Realty Co.* v. *Wright,* 145 *Ga.* 730 (89 S. E. 822), it was held that in dealing with the corporation a vendor (an officer of the bank) was acting in his own interest as opposed to that of the corporation; "and his knowledge as to the misrepre-

sentations and breach of the contract by him, and existence of the note sued upon, at the time of delivery of the deed, would not be imputed to the corporation." See also the case of *Guaranty Inv. Co. v. Athens Eng. Co.*, 152 *Ga.* 596 (110 S. E. 873), which restates the same principle. We think, upon the application of the principle ruled in the cases referred to and the authorities there cited, that the defendant did not show such notice of the alleged duress as would void the note and deed upon which this suit is based.

3, 4. The rulings made in headnotes 3 and 4 need no elaboration. The other assignments of error are without merit.

*Judgment reversed. All the Justices concur, except Russell, C. J. dissenting.*

HINES, J. I concur in the result reached by the court in this case. I do not agree with the view of the majority that the defense of duress was made out against the bank; and for this reason I am of the opinion that a verdict was demanded in favor of the bank upon the issue of duress. I agree with the conclusion reached by the court, that, even if there were duress, there was no evidence to connect the bank with it. I am authorized to say that Justice Atkinson agrees to what is said above.

RUSSELL, C. J., dissenting. I dissent because I think the judgment of the lower court refusing a new trial should be affirmed. I concur in the main with the view of Mr. Presiding Justice Beck as to the law of duress. I agree that no amount of duress exercised or operative upon Mrs. Merritt could affect the plaintiff unless knowledge, or sufficient notice to put the bank on inquiry, of this duress was brought home to the bank. Whether or not this is true is a question of fact; and I think that the circumstances submitted to the jury in this case were sufficient to authorize their finding upon this subject.