ELLIS, administrator, v. HIBERNIA SAVINGS, BUILDING AND LOAN ASSOCIATION.

No. 10383. MARCH 2, 1935.

*Walter G. Cooper Jr.* and *Robert P. McLarty,* for plaintiff.

*Clarke & Clarke* and *H. W. McLarty,* for defendants.

ATKINSON, Justice. On December 15, 1931, Mrs. Sarah E. Sennett instituted an equitable action against the Hibernia Savings, Building and Loan Association and Peter F. Clarke. Mrs. Sennett died, and Frampton E. Ellis as administrator of her estate was substituted as plaintiff. After institution of the suit Peter F. Clarke was adjudged insane, and H. W. McLarty was appointed his guardian ad litem. The case was heard on demurrers interposed by each defendant. The court overruled the demurrer of Clarke, to which ruling there was no exception. The court sustained the general demurrer interposed by the Hibernia Savings, Building and Loan Association, and as to that defendant dismissed the action. The plaintiff excepted.

The petition as amended alleged substantially the following: The plaintiff is a widow 88 years of age, who at the time of the transactions hereinafter referred to resided beyond the limits of the State. Prior to 1907, and continuously until 1931, Peter F. Clarke as her trusted agent and friend handled money for her in making loans and collections thereof on real estate. While acting as such agent in 1913 Clarke in behalf of petitioner loaned, from funds in his hands as agent, $1000 to Mrs. Wilson, for which a security deed was duly executed. The deed conveyed certain land in DeKalb County, Georgia, of the value of $7000. Clarke continued to handle this loan as well as other loans for plaintiff. The Wilson loan became in default, and Peter F. Clarke employed J. Caleb Clarke as attorney at law, and proceeded to foreclose the security by suit in which a judgment was rendered on June 12, 1919, in favor of plaintiff for the principal debt with accumulated interest and attorney's fees, amounting approximately to $1500. Execution was issued, and the property brought to sale in October, 1919. Peter F. Clarke, acting as her agent in handling the collection of this loan, bid in the property at $1000, and received a deed in his individual name. He did not remit to her the proceeds of the sale or report the sale to her, but concealed from her the fact of the sale, and subsequently wrote to her letters stating that no collection had been made of the loan. On the basis of such conduct, it was alleged that Peter F. Clarke, in taking title to the property in his own name without the knowledge of petitioner, and his failure to remit the proceeds, constituted him in equity a trustee ex maleficio for her benefit. On May 15, 1923, approximately four years after the sale,

Peter F. Clarke individually procured a loan of $5200 from the Hibernia Savings, Building and Loan Association, giving as security therefor a deed conveying the realty above referred to. At that time he was a director and secretary and treasurer of the association just named, and acted as a member of its loan committee passing on the loan. He participated in the directors' meeting at which the loan was approved, and signed the minutes as secretary. The check issued by the association for the money loaned was signed in its behalf by Clarke as one of the officers. "Thus the association had notice and knowledge of Mrs. Sennett's interest in the property, since it was represented in the transaction by Peter F. Clarke, who had full knowledge of the facts, and of the interest of Mrs. Sennett. Furthermore, the record of the foreclosure sale, duly recorded in the office of the clerk of the superior court of DeKalb County, constituted part of the chain of title to the property, and was notice of the actions of Peter F. Clarke in breach of his fiduciary duty to Mrs. Sennett." In paragraph 16 of the petition it was alleged: "At the time of the deed . . the Hibernia Savings, Building and Loan Association, through its agents acting in its behalf, had notice or actual knowledge of the misconduct of Peter F. Clarke above mentioned, and of the equity of Mrs. Sarah E. Sennett in the said property, for the following reasons:

"The application of Peter F. Clarke for this loan was referred to the Real Estate Committee. This committee had the function of considering the application, the security offered, and the circumstances of the case, and deciding whether the loan should be made. There were three members of this committee. Peter F. Clarke was a member. The Real Estate Committee, including Peter F. Clarke, considered this application in behalf of the association, and decided that it should be made. Also, the board of directors including Peter F. Clarke met and approved the application in behalf of the association. The regularly employed attorney of the association was then directed to examine the title to the land offered as security, this being the same land described in paragraph three of the petition. This attorney had authority, in behalf of the association, to examine the title to the said land, and to report any defects in the title of Peter F. Clarke, whether appearing of record or personally known by the attorney. He did examine the title to the land for the association. He was the at-

torney who had handled the foreclosure of the loan deed of Mrs. Clifford W. Wilson in favor of Mrs. Sennett, and so he had actual knowledge of Peter F. Clarke's fiduciary relation to Mrs. Sennett and of Peter F. Clarke's actions with reference to the purchase of the property in his own name, and that he paid nothing therefor, and he had knowledge of Mrs. Sennett's equity in the property. When the loan of $5200 was made to Peter F. Clarke, the loan check of $5200 was signed in behalf of the Hibernia Savings, Building & Loan Association by Peter F. Clarke as secretary and treasurer, and he alone signed the check in behalf of the association. Thus the association was not a bona fide purchaser or lender."

Other allegations were substantially as follows. Clarke subdivided the land into lots, and during the period intervening between 1924 and 1927 made sales of designated lots, deriving therefrom $18,250.-00, and in the consummation of the sales the Hibernia Savings, Building and Loan Association executed quitclaim deeds to the respective purchasers. From the proceeds of the subdivision and sale at least $4819.20 was collected in behalf of the Hibernia Savings, Building and Loan Association by Peter F. Clarke, and was retained by the association. The only claim of the association to said funds was under and through Peter F. Clarke. The said funds were used in the business of the association and mingled with its assets, in which shape they continued to remain. Said funds increased the association's assets, and are now traceable in the assets of the association, and are impressed in equity with a trust in favor of petitioner. In May, 1931, Peter F. Clarke executed to the Hibernia Savings, Building and Loan Association a deed conveying all the land upon a purported consideration of "ten dollars and other valuable considerations." There was in fact no cash or property given as present consideration of the deed. It was given as part payment on the pre-existing debt of Clarke to the association; and therefore the association was not a purchaser for value. At the time of accepting the deed the Hibernia Savings, Building and Loan Association "had notice, or actual knowledge, through its agents acting in its behalf, of the misconduct of Peter F. Clarke, above mentioned, and of the equity of your petitioner in said property," and "its action in accepting the deed assisted Peter F. Clarke in his misapplication of the property described in the deed; and for this wrong the association should be held accountable. By tak-

ing this deed the association was unjustly enriched at the expense of Mrs. Sennett, and therefore it became trustee ex maleficio or by operation of law as to the property acquired by the deed. Petitioner had no knowledge of any of the actions of the Hibernia Savings, Building and Loan Association until the fall of 1931, and the company concealed the fact that it had received any of the proceeds of the property until 1934. Whatever title either of the defendants may have to the property or any part thereof in equity and good conscience belongs to petitioner.

The prayers were (1) "For a general judgment against each defendant for at least $4819.20, and costs, and attorney's fees, and for an accounting in order to determine what, if any, allowance should be made to either or both defendants, and in order to so mold the decree as to do full equity between the parties, as petitioner stands ready to do equity; and in addition that the defendants be held to be trustees ex maleficio as to the property described in paragraph three of the petition, and the proceeds thereof." (2) "That petitioner have in addition a lien against the property described in paragraph three of the petition, to secure the aforesaid judgment; and that the defendants be decreed to hold whatever interest they have in said property for the benefit of petitioner, and that they be required to convey such interests to petitioner, or pay petitioner the value thereof." (3) "And that the assets of the Hibernia Savings, Building and Loan Association be impressed with a trust in favor of petitioner to the extent of $4819.20."

■ "Trusts are implied . . whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase money or other circumstances, is either wholly or partially in another." Code of 1910, § 3739 (Code of 1933, § 108-106). The allegations of the petition are sufficient, as against a general demurrer, to charge an implied trust in favor of the plaintiff.

"All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured." Code of 1910, § 3784 (Code of 1933, § 108-423). On the question of notice to the Hibernia Savings, Building and Loan Association of the alleged fraud of Peter F. Clarke, paragraph 16 of the petition as finally amended (quoted above), construed most strongly against the plaintiff, purports to charge notice to the corporation only by imputing

to that institution knowledge of Peter F. Clarke of the fraud which he had perpetrated against the plaintiff, and knowledge of the corporation's attorney of the same fraud, which he had acquired before his employment to investigate the title for the corporation. Clarke was one of several officers of the corporation making the loan to himself, and consequently he was not the sole officer through whom the corporation could act. In negotiating the loan and throughout the transaction he was acting in his individual interest. As to that transaction he was dealing at arm's length with the corporation, and his secret knowledge of fraud he had perpetrated upon the plaintiff will not be imputed to the corporation. *Peoples Bank of Talbotton* v. *Exchange Bank,* 116 *Ga.* 820 (3) (43 S. E. 269, 94 Am. St. R. 144); *Pursley* v. *Stahley,* 122 *Ga.* 362 (50 S. E. 139); *Georgia Milk Producers Association* v. *Crane,* 137 *Ga.* 50 (72 S. E. 414); *Union City Realty & Trust Co.* v. *Wright,* 145 *Ga.* 730 (3) (89 S. E. 822); *Guaranty Investment & Loan Co.* v. *Athens Engineering Co.,* 152 *Ga.* 596 (110 S. E. 873); *Habersham Bank* v. *Merrill,* 157 *Ga.* 695 (122 S. E. 37). The case differs from *Brobston* v. *Penniman,* 97 *Ga.* 527 (25 S. E. 350), in which the bank acted through both its president, the alter ego of the bank, and its cashier, the bank's special agent for negotiating loans, who were the only officers through whom the bank could act. It also differs from *Fouché* v. *Merchants National Bank of Rome,* 110 *Ga.* 827 (36 S. E. 256), *Morris* v. *Georgia Loan, Savings & Banking Co.,* 109 *Ga.* 12 (34 S. E. 378, 46 L. R. A. 506), *Town of Douglasville* v. *Mobley,* 169 *Ga.* 53 (149 S. E. 575), and *Bank of Dania* v. *Farmers & Traders Bank,* 169 *Ga.* 846 (151 S. E. 803), in which one officer occupied a dual relation to separate corporations and was not acting in his individual interest. Even if the allegations were sufficient to charge that the attorney acquired notice of Clarke's fraud, through his previous representation and in bringing the property to sale, the allegations are insufficient to charge imputation of such notice to the corporation. *German American Mutual Life Asso.* v. *Farley,* 102 *Ga.* 720 (2) (29 S. E. 615); *Citizens Bank* v. *Citizens & Southern Bank,* 160 *Ga.* 109 (4), 118-119 (127 S. E. 219).

■ The rulings stated in the second division deal with the transaction as relates to the original security deed and the rights of the parties thereunder. The subsequent deed executed by Peter F.

Clarke, in May, 1931, to the Hibernia Savings, Building & Loan Association purported to convey Clarke's equity of redemption in the same property. This deed is also attacked upon the same grounds of fraud perpetrated by Clarke, of which the Hibernia Savings, Building & Loan Association was alleged in general terms to have notice, the actual charge being that the named corporation "had notice or actual knowledge, through its agents acting in its behalf, of the misconduct of Peter F. Clarke above mentioned, and of the equity of your petitioner in said property." As against a general demurrer, this was a sufficient charge of notice and knowledge to the corporation, which might be shown on the trial. On this branch of the case the general demurrer was erroneously sustained. As the judgment is reversed for the reason stated, no ruling will be made on other grounds of attack on this deed.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J., concurring specially. I concur in the judgment of reversal, as stated in the third division of the opinion. I do not concur in the ruling contained in the second division. My views concur, in my opinion, under the facts of the case at bar, with those expressed in *Brobston* v. *Penniman,* 97 *Ga.* 527, 529-530 (supra), where Mr. Justice Lumpkin, after citing a number of authorities, said: "These cases all proceed upon the idea that as a corporation must of necessity entrust its affairs to officers and agents, and can transact business only through their agency, it must be held chargeable with their acts while in the performance of their duty to it; and if its duly selected servants prove unfaithful to their trust, the corporation itself must suffer, rather than innocent third persons. Surely, as against such persons, a corporation can not claim the benefits arising from any contract made in its behalf through its officers, when these officers knew that the contract would operate as a fraud upon others, but nevertheless participated in or connived at the fraudulent transaction. The corporation would be bound either to repudiate entirely, or adopt unconditionally and without reservation, the acts of its agents in negotiating for and perfecting the contract made in its behalf—it could not elect to ratify and adopt such of the acts and conduct of its agents as operated beneficially to it, and repudiate such conduct (active or passive) as would constitute a fraud upon the parties sought to be charged with the contract. To hold, in the present case, that the plaintiff was entitled to recover

upon the note held by the bank, would be to allow the plaintiff to assume such an anomalous position. See also *Guarantee Co. of N. A. v. East Rome Town Co., 96 Ga.* 511 [23 S. E. 503, 51 Am. St. R. 150]." I am authorized to say that Mr. Justice Hutcheson concurs in what I have just said.