McMILLAN *et al.* v. TUCKER, commissioner, *et al.*

1. A levy of a county tax " for the purpose of raising funds to meet the public expenses of said county for the fiscal years 1921-22 " could be amended after the expiration of that year, so as to make the levy refer to the year 1921 alone.

2. Section 513 of the Civil Code provides that county taxes may be levied for stated purposes; and section 514 provides that in making a levy of taxes for such purposes the order making the levy " must specify the per cent. levied for each specific purpose." A levy of a given number of cents on each one hundred dollars of the taxable property in the county for each of the purposes for which the tax could be levied is a substantial compliance with this law.

3. Under the facts of this case, in view of the broad discretion vested in the county authorities in levying taxes for county purposes, with which reviewing courts should not interfere unless it is clear that such authorities have abused their discretion, we can not say that the levies for different county purposes are excessive. *Commissioners* v. *Porter Mfg. Co.,* 103 *Ga.* 618 (30 S. E. 547).

4. The total of items 2, 3, 4, 5, and 8 of the tax levy, with the elimination of item 8, and as reduced by the amendment of January 2, 1922, does not exceed 50 per cent. of the State tax levied for the year 1921; and the judge did not err in refusing the injunction as to these items.

5. Under the ruling in *Wright* v. *Southern Ry. Co.,* 137 *Ga.* 801 (74 S. E. 529), the new item for paying the indebtedness of the county due and to become due is illegal and void, and should be enjoined.

6. Where under the approval of a popular vote public schools had been established and maintained by local taxation in Irwin county since 1907, and a tax of five mills had been levied for that purpose, the county commissioner of that county was not authorized, on the recommendation of the board of education of that county, to assess and collect taxes for the support of such public schools in excess of five mills on the dollar, under the amendment to the constitution of this State adopted in 1920, under which the tax levied by such popular vote will continue in force until changed by the recommendation of such board within the limits fixed by said amendment.

7. The court did not err in admitting evidence of expert witnesses as to the condition of the public bridges and buildings of the county, and the probable cost of repairing them; such evidence being relevant to the issue whether a levy of taxes for purposes of repairing the same was excessive, and not being mere conclusions of the witnesses.

8. The provision of the Civil Code (1910), § 515, in reference to advertising the order levying county taxes " is directory and not mandatory," and a failure to comply with such provision does not render the tax levy void.

9. A tax can be legally levied by a county for the purpose of paying the expenses of tick eradication; but as the tax levied for this purpose by amendment and the taxes levied in items 2, 3, 4, and 5 of the original levy exceed 50 per cent. of the State tax, it was illegal; and the trial judge should have enjoined the same, in the absence of any amendment reducing this item so as to bring the total of items 2, 3, 4, 5, and 8 within 50 per cent. of the State tax.

No. 3128. AUGUST 24, 1922.

Petition for injunction. Before Judge Eve. Irwin superior court. January 18, 1922.

On September 5, 1921, L. R. Tucker as sole commissioner of roads and revenues of Irwin County, Georgia, made a levy of taxes, which, omitting the formal parts, was as follows:

" For the purpose of raising funds to meet the public expenses of said county for the fiscal year, 1921-22: It is hereby ordered that $1.95 on $100.00 of the taxable property of said county, with the exception noted in item 7 of said levy, be and the same is hereby levied on all property which appears on the tax digest for year 1921, for the following purposes, to wit:

" 1st. 29 cents on the $100.00 to build and repair bridges, repair court-house and jail, and for all other improvements, by the purchase of the necessary materials and the hiring of the necessary labor.

" 2nd. 10 cents on the $100.00, to pay the sheriffs and jailors and the other officers' fees that may be legally paid by the county.

" 3rd. 01 cent on the $100.00, to pay coroners all fees that may be due them by the county for holding inquest.

" 4th.   03 cents on the $100.00, to pay expenses of the county for court bailiffs, non-resident witnesses in criminal cases, fuel, servant hire, stationery, and the like.

" 5th.   15 cents on the $100.00 to pay jurors a per diem compensation.

" 6th.   07 cents on the $100.00, to pay expenses incurred in supporting the poor of the county and as otherwise prescribed by the code.

" 7th.   75 cents on the $100.00, for the support of the public schools of the county on all property without the limits of the City of Ocilla.

" 8th.   07 cents on the $100.00, to pay any other lawful charge against the county.

" 9th.   48 cents on the $100.00, to pay the expense of equipping, maintaining, and keeping the convicts or chain-gang on the public roads of the county; making in the aggregate the sum of $1.95 on the $100.00 of the taxable property of said county, for county purposes for the year 1921.

" It is further ordered: that the tax-collector of said county collect the same while collecting the State tax for said year and turn the amount over to the commissioner of roads and revenues of said county, as directed by law; provided, however, that he files with the undersigned the proper bond with approved security before beginning the collection thereof, which bond is fixed at $50,000."

The 7th item of the levy was made in pursuance of a resolution by the board of education of the county, which was as follows: " Be it resolved by the Board of Education of Irwin County, in regular meeting assembled, that said board hereby recommends and directs the county commissioner of said county to levy a tax of five mills on the dollar on all taxable property of said county, located outside of the incorporate limits of Ocilla, for school purposes for the year 1921; this levy to be made under the provisions of the McMichael Law as embodied in the Code of the State of Georgia.   Be it further resolved by said Board of Education of Irwin County, Georgia, that said board hereby recommends and directs the county commissioner of said county to levy an additional tax of two and one half mills on the dollar on all taxable property of said county located outside of the incorporate limits of

the City of Ocilla, for school purposes for the year 1921; this levy to be made under the provisions of the Elders-Carswell law as set out in the Acts of 1919, pages 66 to 68, inclusive; making a total levy recommended by said Board, for school purposes for the year 1921, of 7½ mills on the dollar on all taxable property of said county located outside of the City of Ocilla."

On January 2, 1922, the commissioner amended his tax levy above set out; the amendment, omitting the formal parts, being as follows: "Whereas, in the order passed on September 5th, 1921, levying and assessing for the County of Irwin for the year 1921, there appears the following words: 'For the purpose of raising funds to meet the public expenses of said county for the fiscal year 1921-1922'; and whereas, the taxes therein assessed and levied were really assessed and levied for the year 1921 alone, the said tax levy is amended by striking therefrom the above-described words and substituting in lieu thereof the following: 'For the purpose of raising funds to meet the public expenses of said county for the year 1921.'

"And whereas, in the levy of September 5th, 1921, for taxes for said county for the year 1921 no provision was made for the payment of debts outstanding against said county; and whereas there was then and there outstanding against said county debts represented by county warrants for previous years to 1921, the sum of approximately $1200.00: Now therefore the said levy is further amended as follows: The 4th item of the levy of .03 on the hundred dollars to pay expenses of the county for court bailiffs, etc., is amended to substitute .02 instead of .03 on the hundred dollars; and the item 5th of 15c. on the hundred to pay jurors, etc., is amended so as to substitute 12c. for 15c.; and the said levy is further amended by transferring the .01 on the hundred dollars taken from item 4th of the said levy and the .03 per hundred taken from item 5th of said levy, and this .04 per hundred dollars is made a fund and the tax is hereby assessed of .04 upon the hundred dollars of taxable property of said county, for the purpose of paying the legal indebtedness of county due or to become due during the year 1921 or past due.

"And whereas item 8 of said levy of taxes of September 5th, 1921, in the 8th item thereof assesses '07 cents on the hundred dollars, to pay any other lawful charge against the county,' and

whereas said item was really levied for the purpose of paying the expenses of tick eradication in the said County of Irwin for the year 1921: the said tax levy of September 5th, 1921, in its 8th item is amended so that said 8th item will read as follows: ' 07 on the one hundred dollars to pay expenses of cattle-tick eradication in Irwin County for the year 1921.'

". And whereas the 9th item of said levy of September 5th, 1921, levies and assesses ' 48 cents on the $100.00, to pay the expenses of equipping, maintaining, and keeping the convicts or chain-gang on the public roads of the county; making in the aggregate the sum of $1.95 on the $100.00 of the taxable property of said county, for county purposes for the year 1921;' and whereas it appears that since the date of the order of September 5th 1921, the commissioner of roads and revenues of said county has borrowed, for the purpose of paying casual deficiencies of revenue in said county, the sum of $6,000.00, for the payment of which no other provision has been made: Now therefore item 9th is amended by substituting for the words ' 48 cents on the $100.00 ' the words '.40 on the $100.00,' and the said extra .08 on the $100.00 in said item is transferred and made a fund for the payment of said money so borrowed to pay casual deficiencies of revenue in said county; and the following levy is therefore made, to wit: ' To pay the legal indebtedness of the county for the year 1921, consisting of the money borrowed as aforesaid to pay the casual deficiencies in revenue of said county:    .08 on the $100.00 of taxable property of said county.' "

On January 6, 1922, the commissioner again amended his tax levy, which amendment, omitting the formal parts, was as follows:

" The tax levies heretofore made and the amendments thereof prior to this date are now again amended as follows: Item, ' To pay the legal indebtedness of the county for the year 1921, consisting of the money borrowed as aforesaid to pay the casual deficiencies in revenue of said county: .08 on the $100.00 of taxable property of said county,' is stricken. The whole aggregate of the taxes for said county, therefore, for the year 1921, is changed from the sum of $1.95 on the $100.00 of the taxable property of said county for county purposes for the year 1921, so as to make said aggregate sum $1.87 instead of $1.95 on the $100.00.

It being made to appear to the court that a number of taxpayers have paid their taxes for the year 1921 on the basis of $1.95 on the taxable property, which is an excess of $8/10$ of a mill of the amended tax levy, it is therefore ordered by this court that the $8/10$ of a mill on the $100.00 of the taxable property of each taxpayer be refunded by the tax-collector of Irwin County, Georgia, to each and every taxpayer who has heretofore paid his or their taxes, so as to make the taxes apply to all taxpayers alike."

On December 17, 1921, Jacob McMillan et al., as citizens and taxpayers of Irwin County, instituted an action to enjoin the collection of taxes under the levy and its amendments as above indicated. Among the grounds of complaint it was objected that items 1, 2, 3, 4, 5, 8, and 9 of the tax levy first above mentioned were void on the ground that they were grossly excessive. The evidence relied on to show that the judge was required to hold the items of the levy above mentioned to be void on the ground of excessiveness was substantially as follows:

W. J. Roberts, coroner, testified that for holding inquests he received during the year 1919 the sum of $10; during the year 1920 he did not receive anything; during the year 1921 he received the sum of $44, which covered the entire expenses of the coroner's office for the years mentioned, with the exception of the amount paid the jurors in inquest cases and subpœnas for witnesses, which amounted to $6 in 1919, nothing in 1920, and $34.60 in 1921.

J. J. Flanders, editor of a local newspaper in which sheriff's advertisements had been published, testified that during the years 1919, 1920, and 1921 no advertisement for bids had been published by the commissioners of roads and revenues for contracts to build or repair bridges, or to build or repair the court-house or the jail. Dempsey Taylor, the warden of the convict camp, testified that during the year 1921 there was an average for the year of about 18 convicts on the chain-gang of the county.

L. R. Tucker, commissioner of roads and revenues, testified as follows: "During the year 1921 there was no contract let for the building and repairing of bridges and roads; there were no contracts advertised for repairs on the court-house and jail. During the first part of the year some money was spent in making repairs such as plumbing; there was nothing like $300 spent at any one time. The convicts worked on the roads and bridges

during the year; we repaired a good many bridges; my records show how much was spent for material; they also show how much was spent in maintaining the chain-gang; it shows the whole thing. I don't know how many convicts we had during the year 1921; the first part of the year we had a small gang; there are about twenty-five or may be thirty now. I don't know what you mean by keeping each item of the tax levy separate and distinct on my books. I do in a way. I have the different funds on record, and some of the funds have a deficiency. The funds are subdivided — chain-gang fund, superior court fund, and general funds; and then all under one head, but the fund is then subdivided. To the bridge fund proper I charge what I pay for material and labor and sundry expenses coming about, such as would not be either material or labor; the greatest amount of bridge expense comes under repairing and building — it comes under chain-gang fund for this year, because for this year practically all of the repairing has been done with the chain-gang. I have had some other repair work — small jobs, done otherwise; for instance, just where a few planks need putting in, I could get a man living close by to take two or three men and fix it, cheaper than by sending the chain-gang out there. All of that is then charged to the bridge fund proper. I do not have the occasion or necessity to try and figure out separate the bridge fund and the work done by the chain-gang one from the other; the only way I can arrive at that is by an estimate of the time that the chain-gang has been employed in doing such work, and the cost of maintaining the chain-gang per month. I do not make a separate and distinct entry of this estimate and charge. The only items which I charge to the bridge fund proper is the material bought and the labor employed outside of the chain-gang. The work done by the chain-gang in building and repairing bridges is not charged to that fund, but is a part of maintaining the chain-gang, and so charged. When the chain-gang is employed to do work on the roads and bridges, I charge no vouchers to the bridge fund as such, but direct and charge them against the chain-gang fund. No expense for repairing bridges is charged to the bridge fund proper; I charge these to the chain-gang: for instance, on this book I can show you the separate funds — the chain-gang fund, the bridge fund, and such expenses as you stated I charge to maintaining the chain-gang and not to

the bridge fund proper. When I go to figure in order to make a tax levy, I figure on the condition of the bridges in the county at the time I make the levy,— my general knowledge of them and the cost of material and so forth, in rebuilding or repairing them — whatever has to be done to repair them. I make a survey of the conditions of the bridges. I have a separate and distinct bridge fund and chain-gang fund: and when the bridge fund is all exhausted the chain-gang fund comes in. I don't levy any of the bridge fund for the support of the chain-gang, except the part I expect to spend in that kind of work in operating the chain-gang; then any balance that might remain in the bridge fund is applied to the indebtedness due to the chain-gang fund. It is my custom to apply any balances over to liquidate any deficiency in any other fund. It is impossible to tell exactly what you might need in one fund; and if there is a balance, why I charge it to the fund that is deficient. The chain-gang fund is the one that is usually deficient. Just prior to the time I make my levy I make my estimate as to what is proper amount to carry on the work; that is in August of each year. The amount expended during 1921 chargeable to the bridge fund up to December 31st, 1921, and the bills that are to be paid, amount to $1551.69. I have not made any transfers yet. I make them from time to time. I figure up and make comparisons, and then make the transfers. I have not made any transfers in about three years; that is, I have made no entries on the books. I generally leave it off until the auditor makes his audit. I do not make any formal entries on my books of the amounts transferred from one fund to another fund each year. I make notes, and sometimes later I make the transfers. I generally wait until the audit is made before I lump it in the general fund. I would not undertake to say when I made my transfers last. I have no record on my books of transfers; as a matter of fact I have transferred all balances to the general fund and expended it on the county's indebtedness. I can't give you exactly the amount spent in the year 1921 for repairs of the court-house, because that is in the general fund, — divided under that head in separate items. Item one of the levy is chargeable to the general fund. I could not say exactly the amount spent; my records will show what was spent on public buildings, whether they show whether it was for the court-house or for the jail,— that

is up to August 31st. In this column [referring to books] is
'Maintaining Public Buildings.' These figures here are the au-
ditor's, and not mine; that is the amount up to the time the audit
was made on August 31st,— the 1st of September. This is ab-
solutely correct up to August 31st. That $4.50 and $2.50 and
then $35.00, totaling $42.00, under head of maintaining public
buildings, represents the entire expense for the months. I cannot
tell what the entire amount was spent for without getting the
vouchers. That item of $35.00 on August 1st, to Buck Turner,
was for janitor's work; it was not for repairs; that item appears
each month under the head of maintaining public buildings. All
items appearing under the head of improvements represent im-
provements actually made on public buildings. I put improve-
ments in one column and maintenance and expense in another;
and additional improvements and maintenance is an expense for
repairing, etc. Repairs are put in maintenance and expense column
and improvements in the column for improvements. Maintenance
and expense includes all repairs, and the payment of the janitor,
coal, oil, and sanitary supplies; this does not include stationery;
printing and postage is in the general fund in the account for
printing and postage. All outside of the special funds, the chain-
gang, and jury and pauper and superior court fund, comes into
the general fund. The money I levied for the general fund goes in-
to that fund. I make a levy for general fund. I can show you the
items that make up the general fund; they are the levies made for
purposes other than the chain-gang, pauper, coroner, and superior
court; everything except those are in the general fund. The
bridge fund does not go into the general fund; the second item
is to pay sheriff and jailer and other officers; that goes into the
the general fund. Item three, 1 cent on one hundred dollars for
the coroner, that is a separate fund. Item four, non-resident wit-
ness fees, fuel and servant hire, and stationery, and the like, goes
into the general fund. Buck Turner's services comes out of the
general fund. I haven't got it charged on my books that way.
Item five, 15 cents to pay the jurors their per diem, is the superior-
court fund, and that item is to pay the clerk; sheriff and bailiffs
goes to the superior court fund too. I want to correct that. Item
six, for the paupers, is a separate fund, the pauper fund. Item
seven, the school fund, I don't have anything to do with that.

Item eight goes into the general fund to pay any other lawful expense of the county. Item nine, 48 cents for the chain-gang, goes in the chain-gang fund. I put tick eradication in the general fund; that is levied under the head of any other lawful charges. Under the system used, that fund was transferred to the general fund; in 1920 when he had only $10.00 charged against the county, I put it in the general fund. As a result of these excessive levies I have not been able to put any surplus in the treasury. I have not been able to pay the just debts."

The books of the commissioner of roads and revenues were introduced, which showed, that " In the year 1919 taxes in the County of Irwin were collected for the road and chain-gang fund, amounting to $16,298.65, and in the year 1919 there was expended from the road and chain-gang fund in said County of Irwin $26,251.96; that in the year 1919 there was collected in the County of Irwin taxes for the bridge fund amounting to $10,442.76, and that there was during the year 1919 expended from the bridge fund in the County of Irwin the sum of $3,794.79; that during the year 1919 there was collected taxes in the sum of $4,641.23 for the superior-court fund, and that during said year there was expended from said fund $7,362.53; that during the year 1919 there was collected in the County of Irwin taxes for the fund to pay coroner's fees in the sum of $386.73, and that during said year there was expended for the purpose of paying the fees of coroners and expenses thereof the sum of $55.39; that during the year 1919 there was collected in taxes in Irwin County, for the purpose of paying expenses of the jail, the sum of $3,954.29, and that during said year there was expended from this fund the sum of $3,423.52; that there was collected in the year 1920 for road and chain-gang fund from the taxpayers of said county the sum of $17,859.12, and that during said year there was expended for the maintenance of the chain-gang and the roads the sum of $22,469.59; that for the year 1920 there was collected from the taxpayers of said county for bridges the sum of $11,146.86, and that during said year there was expended for bridges the sum of $4,227.02; that during the year 1920 there was collected in said County of Irwin in taxes for the expenses of the superior court the sum of $5,166.56, and that during said year there was expended for said purpose the sum of $4,687.85; that during the year 1920 there was collected

in taxes from taxpayers of said County of Irwin for the purpose of paying the expenses of the coroner of said county the sum of $398.69, and that during said year the county expended for the entire expenses of the coroner's office the sum of $65.54; that for the year 1920 there was collected from the taxpayers of said county, for the purpose of paying the expenses of the jail and jailor of said county, the sum of $3,900.26, and that during said year there was expended for the expenses of the jail and jailor of said county the sum of $1,930.79." It was admitted that the entire taxable value of the property for the County of Irwin for the year 1921 amounted to $3,613,091.

The bill of exceptions recites that the plaintiffs introduced the books and records of the commissioner of roads and revenues of the county for the year 1921, which·showed the following: "Under item 1 of the tax levy of September 5th, 1921, there would be raised the sum of $10,477.96 for the purpose of building and repairing bridges, repairing the court-house and jail, and for all other improvements by the purchase of the necessary material and the hiring of the necessary labor. It was further proved by said evidence that during the year. 1921 there was expended by the County of Irwin, for all of the. items included in item one of the tax levy complained of, the sum of $918.69. By said records it was further shown that under item 2 of the tax levy of September 5, 1921, for the purpose of paying the sheriffs and the jailors and the county officers' fees that may be legally paid by the county, there would be raised under the tax levy of September 5th, 1921, the sum of $3,613.09; and by said records it was shown that under the 5th item of said tax levy, for the purpose of paying jurors the per diem compensation, there would be raised the sum of $5-419.63, making a total of $9,032.72 to pay the expenses of superior courts. Said books and records further show that there was expended from said two funds during the year 1921 the sum of $8,191.99. Said books and records further showed that under item 3 of the tax levy of September 5th, 1921, the sum of $361.30 would be raised during said year for the purpose of paying the expenses of coroner, etc., of said county, and that during said year 1921 there was expended from said fund in said county the sum of $72.60. Said books and records further show that under, the 4th item of said tax levy, of September 5, 1921, to pay the

expenses of the county for court bailiffs, non-resident witnesses in criminal cases, fuel and servant hire, stationery, and the like, there would be raised the sum of $1,083.90 in said county for the year 1921, and that under item 8 of said tax levy, to pay any other lawful charges against the county, there would be raised the sum of $2,529.10; both of which items, under the testimony of the commissioner of roads and revenues heretofore set forth, constituted the general fund, and that under both of said items of the tax levy, to wit, item 4 and item 8, there would be raised the sum of $3,613.00. Said books and records further show that there was expended from the general fund of said county for said two items during the year 1921 the sum of $2,415.16. Said books and records further show that under item 9 of the tax levy, to pay the expenses of equipping, maintaining, and keeping the convicts or chain-gang on the public roads of the county for the year 1921, there was expended by said county, for the purposes in said item 9 of the tax levy specified, the sum of $14,168.30. Said books and records further show that there was expended by the commissioner of roads and revenues for the county during the year 1921, from the general fund of said county, the sum of $13,948.27.

" At this stage of the hearing it was admitted by the defendants that the plaintiffs and each of them were taxpayers of the County of Irwin for the year 1921; and it was further admitted by the defendants that the county was operating under the alternative road law; and it was further admitted that there had been no recommendation of the grand jury of said county, as required by law, for the levy of tax in addition to 50% of the State tax. It was agreed and admitted by plaintiffs and defendants that the provisions of the McMichael amendment as contained in section 6579 of the Code of Georgia had been adopted in the County of Irwin, and that since the year 1907 the board of education of the county had been operating under that law, and each year since 1907 has levied a tax for the support of the schools of said county as provided in the constitutional amendment above referred to, and that Irwin County was operating under the McMichael law at the time that the constitutional amendment of 1920 as embodied in the acts of 1919, pages 66, 67, and 68, was adopted."

Dempsey Taylor, a witness introduced by the defendants, testified as follows: " Affiant says that he is at present county warden of

the County of Irwin, and is familiar with the conditions of the bridges and public buildings of Irwin County; that he was county warden in September, 1921, at the time the commissioner of roads and revenues levied a tax for county purposes for the year 1921; that he was familiar at said time with the condition of all bridges in Irwin County, and was familiar with the condition of the jail and court-house of said county, and that the bridges and the court-house are and were in need of repair and remodeling. Affiant further states that the bridges in said county were in September, 1921, and are at the present time in bad condition, and that there existed at that time a present necessity to make repairs on practically every bridge in the county, with the exception of those bridges between Ocilla and Fitzgerald, Ga.; and affiant states that it is his opinion, basing same upon his experience as an expert in road building and bridge building, and from observations and examination of the condition of the bridges, that it will take approximately six or seven thousand and probably more than this amount to make necessary repairs and to place the bridges of Irwin County, Georgia, in first-class condition.   Affiant states that the convicts of the county were repairing, during the first part of the year 1921 and up until the middle portion thereof, and working on the road from Ocilla to Fitzgerald and in building and repairing the bridges on said road, so that no other roads in the county up to that time were built or repaired except where emergency work had to be done; therefore the bridges on all other roads in the county up to the middle part of the year had little or no work done thereon; and that there existed, on September 5th, 1921, the necessity present to make repairs on all bridges in the county, except the bridges on the highway between Ocilla and Fitzgerald; that on account of having the forces of the county working on the highway between Ocilla and Fitzgerald that it was impossible to make other repairs on the other bridges of the county.   Affiant states that as county warden he worked a greater part of the first six months of 1921 in building with the chain-gang the bridges on the Dixie Highway between Ocilla and Fitzgerald; that he is unable to state definitely the exact number of days that the chain-gang force consumed in actually building and repairing the bridges and the abutments thereto, but he states that in his opinion the cost of the chain-gang during

the time that they worked on the said bridges and abutments thereto was from four to six thousand dollars."

W. E. Tyler, a witness introduced by the defendants, testified as follows: " Affiant says that he is at present sheriff of Irwin County, Georgia, and has been acting in such capacity since January 1st, 1921; that prior to this time he was for about 9 1/2 years the county warden of Irwin County, Georgia; that he was familiar, during the month of September, 1921, with the condition of most of the bridges in Irwin County, and was also familiar with the condition of the jail and court-house of said county, and that both the bridges and the court-house and jail were in need of repair and remodeling. Affiant states that the bridges in said county were and are at the present time in bad condition and were in bad condition during the month of September, 1921, and that there existed at that time a present necessity to make repairs on practically every bridge in the county, with the exception of those bridges between Ocilla and Fitzgerald, and that in affiant's opinion, basing same upon his experience as an expert in road building and bridge building, and from observation of the condition of the bridges, that it will take approximately six or seven thousand and probably more than this amount to make necessary repairs and to place the bridges of said county in first-class condition. Affiant further says that during the year 1921 the jail and court-house of said county were in need of repairs, and that at the time the commissioner of roads and revenues of said county levied a tax that there existed a present necessity of repairing said court-house and jail; the exact amount of money necessary to make said repairs this affiant is unable to state; however, he states upon information and belief that it would take between $500 and $1,000 to place said building in necessary repair and in good condition."

The judge refused an interlocutory injunction, and the exception is to this judgment.

*Wall & Grantham* and *Quincey & Rice,* for plaintiffs.

*Hal Lawson, Philip Newbern,* and *Rogers & Rogers,* for defendants.

FISH, C. J. (After stating the foregoing facts.)

1. The first objection to the validity of the county taxes assessed for the year 1921 is that it was levied " for the purpose

of raising funds to meet the public expenses of said county for the fiscal years 1921-22." It is urged that the levy was illegal, because it was levied for the fiscal year other than that beginning January 1st and ending December 31st of the year 1921. This ground of attack was removed by an appropriate amendment to the tax levy under which the tax was levied, so that the levy would show that it was made to meet the expenses of the county for the year 1921.

2. The second objection to the validity of this tax levy is that each item of the tax so levied does not specify the per cent. of the State tax levied for each of the specific purposes named. Counsel for plaintiffs in error rely on the cases of *Mitchell* v. *Speer, 39 Ga. 56, Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 270), *Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173), and *Butts County* v. *Jackson Banking Co.,* 136 *Ga.* 719 (71 S. E. 1065). None of these cases sustain the position of counsel for plaintiffs. These cases simply hold that the tax levy for the specific purposes mentioned in the Civil Code (1910), § 513, shall not be levied in gross sums, but that the per cent. levied for each of these purposes shall be specified in the order. The case of *Albany Bottling Co.* v. *Watson,* just cited, did not involve a tax on property, but only a business tax. An assessment which gives the cents levied upon each one hundred dollars of property for each of these purposes is a substantial compliance with this provision of the code.

3. It is next objected that under the undisputed facts of this case the levies specified in each of the items, 1, 2, 3, 4, 5, 8, and 9 of the assessment were grossly excessive. We do not find that this attack is well founded. What is said in the 3rd headnote on this subject does not need elaboration.

4. The proper county authorities have power to raise a tax for county purposes, over and above the tax provided in §§ 504, 506, and 507 of the Civil Code, not to exceed fifty per cent. of the State tax for the year it is levied, provided two thirds of the grand jury at the first or spring term of their respective counties recommend such tax. Civil Code, § 508. If such grand jury is not impaneled, or they adjourn without taking action, or they refuse to make such recommendation, and it is necessary to levy such tax to meet county expenses, the county authorities can levy ·

the necessary tax without such recommendation. Civil Code, § 510; *Sheffield* v. *Chancy,* 138 *Ga.* 677, 682 (75 S. E. 1112). The total of items 2, 3, 4, 5, and 8 of the original levy of September 5, 1921, amounted to 3.6 mills, and exceeded the limit of fifty per cent. upon the amount of the State tax levied for that year. The levy for these items, as originally made, exceeded in amount the power of the county authorities in this matter. By amendment two of these items were cut down and the 8th item eliminated, so that they did not exceed the power of the county commissioner in this matter. As reduced by the amendment of January 2, 1922, they did not exceed the amount which the commissioner could levy for county purposes. They then became legal and proper. The trial judge did not err in refusing an injunction restraining the collection of these items, as item 8 was eliminated, and two of the others were reduced, so that the result followed that items 2, 3, 4, and 5 did not exceed the limit.

5. The ruling announced in the fifth headnote requires no elaboration.

6. This brings us to consider the tax levied for educational purposes. Under the constitutional provision upon the subject of establishing and maintaining public schools by local taxation, which was in existence prior to the adoption of the constitutional amendment of 1920, Irwin County in 1907, by popular vote, authorized a tax of five mills for the support of the public schools within its limits. At that time it required two thirds of those voting at an election held for that purpose, to establish and maintain public schools in a county by local taxation. Article 8, section 4, paragraph 1, of the constitution of 1877 (Civil Code, § 6579). Under the amendment of 1920 the board of education of Irwin County recommended that the commissioner of that county levy the tax of five mills, which had been authorized by popular vote, and in addition a levy of two and a half mills; and in pursuance of this recommendation a levy of seven and one half mills was made by the commissioner, to maintain the public schools of that county. The plaintiffs attack this levy upon the ground that it was illegal and void on the ground that it was levied without authority of law. Whether this item is legal or not depends upon the proper construction of the constitutional amendment of 1920. This amendment is as follows: " Authority is

granted to the counties and municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation. The proper county authorities whose duty it is to levy taxes for county purposes in this State shall, on the recommendation of the board of education, assess and collect taxes for the support of public schools under its control, not less than one nor more than five mills on the dollar of all taxable property of the county, outside of independent local systems, which shall be distributed equitably according to the school population, tax values, the number of teachers and their grade of license, among the public schools therein. An additional levy to that already allowed, not to exceed five mills, shall be permissible in independent local systems, municipalities, or school districts on a two-thirds vote of those voting. No additional election shall be required to maintain any local school tax now in existence in districts, counties, or municipalities; provided this bill shall not apply to counties having a local school system of taxation adopted prior to the Constitution of 1877." This amendment to the constitution embraces these propositions: (1) Authority is granted to the counties and municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits, by local taxation. (2) This purpose is now accomplished, so far as counties are concerned, by recommendation of the county board of education alone. (3) An additional levy to that already allowed, not to exceed five mills, shall be permissible in independent local systems, municipalities, or school districts, on a two-thirds vote of those voting. (4) This amendment does not apply to counties having local systems of taxation adopted prior to the constitution of 1877. (5) No additional election shall be required to maintain any local tax in existence in districts, counties, or municipalities at the date of the adoption of said amendment; and such tax shall continue and be levied until changed by the county boards of education within the limits prescribed in this amendment.

Where by popular vote, under the provisions of the constitution of this State in force prior to the adoption of this amendment, public schools had been established and maintained by local taxation in counties, such systems are preserved by the amendment,

and no additional election is required to maintain the school tax levied by popular vote. In such cases the boards of education are without authority to change the tax fixed and established by popular vote, except within the limits of this amendment. Systems already established are preserved and perpetuated. Taxes already fixed by popular vote are to continue until changed as above, with the exception that an additional tax not to exceed five mills is permissible in independent local systems, municipalities, or school districts. This amendment has no application to counties having a local school system of taxation adopted prior to the constitution of 1877. Irwin County having, by popular vote in 1907, established and maintained public schools within its limits by local taxation, that system is preserved by this amendment, including the tax rate fixed by such popular vote; and such rate will continue until changed by the county board of education within the limits of taxation named in that amendment. Such board cannot fix a rate above the maximum or below the minimum rate specified in this amendment. So the levy of two and one half mills in addition to the rate fixed by the popular vote in Irwin County was without authority of law, and the same should have been enjoined.

7. The seventh headnote does not require any elaboration.

8. The provision of the Civil Code (1910), § 515, for advertising the order levying county taxes " is directory and not mandatory, and a failure to comply with such provision will not render the tax levy and assessment void." *McGregor* v. *Hogan,* 153 *Ga.* 473 (112 S. E. 471).

9. The levy of a tax for the purpose of tick eradication is attacked on the grounds, (1) that there is no law which authorizes such a levy for this purpose; and (2) that the amount of this levy, added to other items of the levy, exceeds fifty per cent. of the State tax. A tax can be legally levied for the purpose of paying the expenses of tick eradication. *Townsend* v. *Smith,* 144 *Ga.* 794 (87 S. E. 1039); *Avera* v. *Clyatt,* 152 *Ga.* 280 (109 S. E. 655).

But such tax is one for a county purpose. It was not embraced in the original levy; but added by an amendment. As the tax for tick eradication and items 2, 3, 4, and 5 exceeded the limit of fifty per cent. of the State tax levied for 1921, it was illegal;

and the trial judge should have enjoined item 8, in the absence of any amendment reducing this item so as to bring the total of items 2, 3, 4, 5, and 8 within fifty per cent. of the State tax.

The court erred in not enjoining the levy to pay the legal indebtedness of the county due or to become due, item 7 (the school tax), and item 8 (the tax to pay expenses of tick eradication); and its judgment is reversed in these particulars, but is affirmed in refusing to enjoin the other items of the levy.

*Judgment reversed in part, and affirmed in part. All the Justices concur, except Gilbert, J., absent.*