### 16676. CENTRAL OF GEORGIA RAILWAY CO. *v.* WRIGHT, comptroller-general.

The judge of the superior court did not err in refusing to recommit the case to the auditor, nor in "overruling and disallowing all of the exceptions of fact and all exceptions of law as amended," nor "in making the findings of the auditor the judgment and decree of the court."

(*a*) Section 513 of the Civil Code of 1910 names nine purposes for which taxes may be levied, and when a tax is levied for any one of these nine purposes it includes all items named in that purpose.

(*b*) It is generally held that counties and municipal corporations are liable for money had and received by them and applied beneficially to their authorized objects, although the contract by which the money was obtained was unauthorized by law.

(*c*) County warrants are not such claims as are required by section 411 of the Civil Code to be presented within twelve months after they accrue.

(*d*) The statute of limitations does not begin to run against county warrants until a demand for payment is repudiated or a fund out of which they can be paid is provided.

DECIDED MARCH 2, 1926.

Affidavit of illegality; from Meriwether superior court—Judge Roop. May 11, 1925.

---

Counties, 15 C. J. p. 559, n. 77; p. 609, n. 97, 98 New; p. 635, n. 86; p. 639, n. 17 New; p. 648, n. 69.

Municipal Corporations, 28 Cyc. p. 669, n. 89.

Taxation, 37 Cyc. p. 976, n. 99.

Application for certiorari was made to the Supreme Court.

On March 4, 1924, William A. Wright, comptroller-general, in behalf of Meriwether county, issued a tax fi. fa. against the Cen· tral of Georgia Railway Company for $2488.32 for county taxes for the year 1923 (the Central having paid to the county all of its 1923 taxes except this amount). The fi. fa. was levied on certain property of the defendant, and the defendant filed an affidavit of illegality. The papers were returned to the superior court, and on motion the case was referred to an auditor, with all the powers given him by section 517 of the Civil Code of 1910. The affidavit of illegality was amended by the railway company. The auditor rendered a report against the affidavit of illegality, and the railway company filed a written motion to rerefer the case to the auditor, and also filed exceptions both of fact and of law to the auditor's report. Later the defendant filed an amendment to its exceptions of fact and of law, which was allowed. The judge of the superior court overruled the motion to rerefer the case to the auditor, overruled all exceptions of fact and of law, and rendered a judgment making the finding of the auditor the judgment of the superior court, and assessing costs against the defendant. The railroad company excepted.

*Arnold & Battle*, for plaintiff in error.

*N. F. Culpepper*, contra.

BLOODWORTH, J. (After stating the foregoing facts.) The tax levied for Meriwether county for 1923 contains ten items. Items 1 and 2 only are attacked by the affidavit of illegality. These items are: "1. To pay legal indebtedness of said county, due or past due or to become due, during the year 1923, including bonds and interest on same issued for building the court-house. .002515. per cent. or $2.51 1/2 per $1000." "2. To build or repair court-houses, jails, bridges, ferries, or other public improvements, according to the contract. .005730 per cent. or $5.73 per $1000.00." In the affidavit of illegality it is alleged that each of these items was excessive, and each item was uncertain because levied for "several separate and distinct" purposes, and the per cent. for each of these purposes was not stated, and they were levied for the purposes stated as a subterfuge, and the money raised thereunder was actually used for the expense of the chain-gang and the public roads. Are these allegations of the affidavit of illegality true? A

10

determination of this will settle whether or not the execution is proceeding illegally.

The insistence that certain items were levied as a subterfuge we do not think deserves serious consideration. And there is no merit in the contention of the railroad company that these items of the levy are uncertain because levied for different purposes and the per cent. for each of these purposes was not named. Item 1 is substantially in the language of section 513 (1) of the Code of 1910, except that there are added the words, "including bonds and interest on same issued for building the court-house." The defendant is not contesting the legality of the levy for the payment of the bonds and interest thereon. Item 2 of the levy follows section 513 (2) of the Code of 1910. So it appears that the defendant is insisting that when a county levies taxes "to pay legal indebtedness of said county, due or past due or to become due," or levies taxes "to build or repair court-house, jails, bridges, ferries, or other public improvements," it should specify the different purposes and the per cent. of each for the several items named in these subdivisions of this section of the code. That is not necessary. This section names nine general purposes for which taxes may be levied. When a tax is levied for any one of these nine items all the purposes named in that particular item are embraced in the levy. In *Sullivan* v. *Yow,* 125 *Ga.* 326 (54 S. E. 173), the Supreme Court said: "In *Mitchell* v. *Speer,* 39 *Ga.* 56, it was said: 'It is clearly the intent of the code . . that the county taxes shall be assessed specifically for the several purposes authorized by law. . .' Every order assessing a tax should specify the per cent. *laid for each of the nine specific purposes mentioned in section 548*" (Civil Code of 1910, § 513). (Italics ours.) To the same effect is a statement in the case of *Albany Bottling Co.* v. *Watson,* 103 *Ga.* 506 (2) (30 S. E. 270). In that case Justice Little said also: "Every order assessing a tax should specify the per cent. *laid for each of the nine specific purposes* mentioned in section 548" (Civil Code of 1910, § 513). The original record of file in the office of the clerk of the Supreme Court will show that in the case of *McMillan* v. *Tucker,* 154 *Ga.* 154 (113 S. E. 391), the tax levy was practically in the language of section 513 of the Civil Code of 1910 as to the several items named therein,

and in no item was there any more specific statement as to the ob-
ject of the levy than is made in the code, or as to the per cent. for
each purpose than that named at the beginning of each item; as,
for example, "29 cents on the $100.00 to build and repair bridges,
repair court-house and jail, and for all other improvements, by,
the purchase of necessary material and the hiring of the neces-
sary labor." The plaintiffs insisted that the levy in that case was
illegal for several reasons, and was null and void and of no effect
for the further reason that the order levying the said tax was not
in compliance with the law, in that the said order does not specify
the per cent. of the State tax levied for each specific purpose in
said order named as by law required. In passing upon that case
the Supreme Court said (p. 168): "The second objection to the
validity of this tax levy is that each item of the tax so levied does
not specify the per cent. of the State tax levied for each of the
specific purposes named. Counsel for plaintiffs in error rely on
the cases of *Mitchell* v. *Speer*, 39 *Ga.* 56, *Albany Bottling Co.* v.
*Watson*, 103 *Ga.* 503 (30 S. E. 270), *Sullivan* v. *Yow*, 125 *Ga.*
326 (54 S. E. 173), and *Butts County* v. *Jackson Banking Co.*,
136 *Ga.* 719 (71 S. E. 1065). None of these cases sustain the
position of counsel for plaintiffs. These cases simply hold that the
tax levy for the specific purposes mentioned in the Civil Code
(1910), § 513, shall not be levied in gross sums, but that the per
cent. levied for each of these purposes shall be specified in the
order. The case of *Albany Bottling Co.* v. *Watson*, just cited, did
not involve a tax on property, but only a business tax. An assess-
ment which gives the cents levied upon each one hundred dollars
of property for each of these purposes is a substantial compliance
with this provision of the code." Thus it appears that the tax
levy as made was a substantial compliance with the provisions of
the code. In *Gaines* v. *Dyer*, 128 *Ga.* 594 (58 S. E. 179), Jus-
tice Atkinson said: "The Political Code, § 404 (§ 513 of the
Code of 1910), contains nine purposes for which taxes may be
levied by the county authorities. Among the purposes mentioned
is that of taxation in order to provide funds for the building of
public bridges. The item of the levy which is objected to is in the
language of the code, and sufficiently specifies the purpose for
which the levy was made." In *Commissioners of Habersham
County* v. *Porter Mfg. Co.*, 103 *Ga.* 619 (30 S. E. 550), Justice

Cobb, referring to a tax levy to pay "other lawful charges against the county," said: "The legislature having granted the power in this general way, we can not say that a levy which is in the exact language of the statute is so indefinite that it should be enjoined. While this question was not directly passed upon, the view above presented is deducible from what is said by Judge McCay in the case of *Mitchell* v. *Speer, 39 Ga. 56.*"

Were the levies under items 1 and 2 excessive? The law presumes a tax to be legal, and the burden is on the party attacking it to prove otherwise. *Wright* v. *Southern Railway Co., 146 Ga.* 582 (7) (91 S. E. 681); *Blalock* v. *Adams, 154 Ga.* 326 (3), 333 (3) (114 S. E. 345); *S. A. L. Ry. Co.* v. *Wright, 32 Ga. App.* 258 (122 S. E. 900). County expenses can not be anticipated exactly, and the law gives to the county authorities a broad discretion in this regard. *McMillan* v. *Tucker, 154 Ga.* 154 (3) (113 S. E. 391). This discretion will not be disturbed by the courts unless manifestly abused. In *Commissioners of Habersham County* v. *Porter Mfg. Co.,* supra, Justice Cobb said (p. 617): "The discretion vested in the county authorities must be from the nature of the case a broad one, and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law. See *Barlow* v. *Ordinary of Sumter County,* 47 *Ga.* 639; *Waller* v. *Perkins, 52 Ga.* 233." In determining whether or not the county authorities abused their discretion in making levies for taxes, we can take into consideration conditions as they presented themselves at the time of the levy as well as the amount actually raised by it. The record shows that the county had 950 miles of public highways, more than 400 bridges, many of them across large streams and several that crossed Flint river. The evidence showed that the bridges needed repairs, as did the court-house and other public buildings. The record shows also that when the commissioners met to fix the tax rate for the year 1923, they discussed the indebtedness of the county, the amount necessary to repair the court-house, the jail, the bridges, and make other public improvements, and that the tax levy was made in the light of the information which they then had. G. A. Huddleston, clerk of the board, swore that the commissioners "figured the needs they would have for the year 1923,

and made the levy accordingly. . . To the best of my recollection they figured that it would take something like $2500 to put a new roof on the court-house. . . They figured cn repairing the jail." This witness testified that when the commissioners got together in 1923 to levy this tax they discussed various amounts as to what it would require to fix the court-house, jail, build and repair bridges, and make other public improvements in the county. He swore also: "I heard Mr. Gaston, chairman of the board, say it would take $25,000 to fix the bridges he had in mind to fix at that time. . . They contemplated doing all of these repairs during the year 1923 or as soon as they could get to them. They said at the September meeting that they were going to attempt to do it during the current year. On January 1, 1923, Meriwether county owed something like $38,000 or $40,000. These obligations were incurred by warrants that had been issued by the county to pay debts of the county, . . legal debts, little warrants that had been issued all through 1922." In addition to the above, one of the court-house bonds and the interest thereon, amounting to $1400, was provided for in this levy. In view of these facts can it be said that the levy under either item number 1 of $2.51 1/2 per thousand or under item number 2 of $5.73 per thousand, was excessive, the total property subject to taxation being $5,411,580? The amount actually raised under item 1 was $10,908.18, and under item 2 was $25,080. The auditor found that under item 1 a tax could be legally levied to pay the following:

Court-house bond ................................$ 1000.00
Interest on court-house bond ........................ 400.00
Liability to Mrs. B. M. Leverett ...................... 2000.00
Liability to W. M. McClendon ...................... 5000.00
Amount paid Dixie Metal & Culvert Co. in March, 1923. 1000.00
Amount due LaGrange Banking & Trust Co. in May,
    1923, on Hunt contract ......................... 1000.00
Amount paid W. G. Cleavland Co. in May, 1923, on
    Hunt contract ............................... 1376.00
Amount paid LaGrange Banking & Trust Co. in July,
    1923, on Hunt contract ......................... 7000.00

        Total................................$18,776.00

In its endeavor to show that item 1 was excessive the railroad

company insists that the only portion of the levy under this item which was legal was that for bonds issued for building the court-house and the interest thereon, and that the other items were im-properly classified as "indebtedness of said county due or past due or to become due." With this contention we can not agree. The amount paid the Dixie Metal & Culvert Company was on a claim originating in 1922, and comes clearly under the ruling in *Wilson* v. *Gaston,* 141 *Ga.* 770 (1 *b*) (82 S. E. 136), and *Voris* v. *Early County,* 25 *Ga. App.* 650 (104 S. E. 89). In each of these cases the appellate court held that where a county allowed a legal claim to go by default in the year in which it was created, this would not prevent the county making provision for its payment during the next year. The Leverett and McClendon claims were for money borrowed in years previous to 1922. While notes had been given these parties, they were void and unenforceable. It ap-pears, however, that these claims were originally for legal expendi-tures for which the county was liable and for which warrants had been issued, and that the holders of these warrants had a right of action against the county for money had and received. The treasurer testified that the money received from these parties was deposited in the Greenville Bank and used to take up warrants and indebtedness of the county that had not been paid.

In *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801 (82 S. E. 136), headnotes 3 and 4 are as follows: "An action for money had and received may be maintained by one who has loaned money to a county, and which has been used by it to discharge a legally incurred liability for a current expense, although the governing official or officials of a county have no authority to borrow the money or to give a note therefor. Where a county incurs a law-ful liability for a current expense, and issues its warrant on the treasury for its payment, and subsequently procures another to pay the same out of a loan which he makes to the county, upon disaf-firmance of the illegal loan by the county the lender is subrogated to the rights of the warrant holder whose warrant was paid out of the proceeds of the illegal loan." In discussing that case Presid-ing Justice Evans said (pages 807, 808, 810): "In all cases con-sidered by this court since the adoption of the constitution of 1877, the borrowing of money by counties (not to supply a casual deficiency of revenue) has been treated as forbidden by the con-

stitution. *Mason* v. *Comm'rs of DeKalb County,* 104 *Ga.* 35; *Hall* v. *Green,* 119 *Ga.* 253; *Town of Wadley* v. *Lancaster,* 124 *Ga.* 354. We therefore think that the contract of loan, in pursuance of which the notes to the defendant in error were executed, is violative of article 7, section 7, paragraph 1, of the constitution, and that the notes are not enforceable against the county. Counsel for plaintiffs in error contend that the illegality of the notes pervades the whole transaction, and bars a recovery of the money, even though beneficially applied to a lawful purpose. To this contention we can not give our assent. It is very generally held that counties and municipal corporations are liable for money had and received by them and applied beneficially to their authorized objects, although the contract by which the money was obtained was unauthorized by law. *Allen* v. *LaFayette,* 89 Ala. 641; *Salt Lake City* v. *Hollister,* 118 U. S. 256; *Parkersburg* v. *Brown,* 106 U. S. 487; Dill. Mun. Cor. § 126; 20 Am. & Eng. Enc. L. (2d ed.) 1158; *Luther* v. *Wheeler,* 73 S. C. 83. The principle of liability rests upon the theory that the obligation implied by the law to pay does not originate in the unlawful contract, but arises from considerations outside of it. In ascertaining the quantum of liability the amount of the loan is not taken into account, but the measure of recovery is the money actually applied to lawful municipal or county uses. The obligation to account for money received by the county and actually devoted to lawful purposes rests upon the broad principle of common honesty, which will not permit the county to retain the benefit of money lawfully applied to its use, and at its request, simply because the county lacked the power to borrow the money. . . If a legal liability for a current expense is incurred, and the county issues a note or a bond to pay for it, the note or bond is void. The creditor can not enforce such invalid note or bond by suit, but he can enforce the payment of the county's primary liability to him. If the county received the money borrowed by its officers without authority, and applied it to the purchase of property which it was authorized to buy and hold, or to defraying any other liability which it could legally incur, the lender would stand in the same relation to the county as the person to whom his money was paid."

In *Peed* v. *McCrary,* 94 *Ga.* 488 (21 S. E. 232) (4), the court said: "Although it may be true that the constitution, of its own

vigor, does not confer power to borrow money by temporary loans to supply casual deficiencies of revenue, yet where the money of a lender' has actually been applied to the legitimate uses of a county, that is, to objects to which county revenue may rightly be devoted, it is lawful to repay the loan out of the county treasury when funds for the purpose are on hand, with seven per cent. interest thereon." In *Sheffield* v. *Chancy,* 138 *Ga.* 686 (75 S. E. 1116), Justice Beck said: "If a debt is legal and legally incurred, and is not paid at the time when it falls due, it remains a legal debt and ranks as an accumulated debt." In *Wilson* v. *Gaston,* 141 *Ga.* 770 (82 S. E. 136), Justice Atkinson said (pp. 771, 772) : "The validity of the contract was not destroyed by reason of the diversion of the funds provided for its payment, under the circumstances above enumerated; but, notwithstanding such diversion, the obligation of the county to pay continued to exist. *McCord* v. *City of Jackson,* 135 *Ga.* 176 (5), 177 (69 S. E. 23). After default in payment of the warrant the county was in a condition of having a valid, overdue obligation, and without funds to meet it. What was the duty of the county under these circumstances? The law provides that a tax may be levied to pay the legal indebtedness of a county due, or to become due during the year, or past due. Civil Code, § 513 (1)."

The amounts paid the LaGrange Banking Company and W. G. Cleavland Company were for three warrants isssued to G. W. Hunt for building a county road prior to 1922. By indorsement Hunt transferred two of these warrants to the LaGrange Bank and the other to Cleavland Company. These warrants were for a legal debt of the county, and the holders thereof were subrogated to the rights of Hunt, who built the road. As the only question before the court in the *Wilson* and *Voris* cases, supra, was whether or not the county authorities were authorized to levy a tax to pay certain debts during the next succeeding year after the debts were contracted, these cases are not authority to support the contention made by the railroad company in regard to the claims of Leverett, McLendon, The LaGrange Banking Company, and the Cleavland Company, that if these claims were taxable at all under any head, they were only taxable in the year immediately succeeding the year in which the liability was incurred. If such is the construction to be put upon the ruling in these cases would not the provisions

of section 507 of the Civil Code of 1910 be a "dead letter?" That section is as follows: "When debts have accumulated against the county, so that one hundred per cent. of the State tax, or the amount specially allowed by local law, can not pay the current expenses of the county and the debt in one year, they shall be paid off as rapidly as possible, at least twenty-five per cent. every year." That section clearly provides that the county under certain contingencies may have four years in which to pay its accumulated debt. When do debts accumulate? When they are due or past due. Counsel for plaintiff in error in their brief contended that "if the Leverett and McLendon obligations were taxable at all in 1923, the obligations themselves, not being debts, could not be taxable under the head of debts, but should be taxable under paragraph 9, section 513 of the Civil Code of 1910, reading as follows: 'To pay any other lawful charge against the county.' " This question is settled adversely to the contention of counsel for plaintiff in error by the principle announced in the cases of *Butts County* v. *Jackson Banking Co., Peed* v. *McCrary,* and *Wilson* v. *Gaston,* supra, and especially by the decision in *Seaboard Air-Line Ry. Co.* v. *Wright,* 157 *Ga.* 726 (5) (122 S. E. 37), where it was held: "Subdivision 1 of section 513 is intended to cover and does cover the entire item of a tax levy 'to pay the legal indebtedness of the county due, or to become due during the year, or past due.' Under the terms 'due' and 'past due' is embraced, necessarily, the 'accumulated indebtedness' of the county. Indebtedness of the county 'due' or 'past due' may possibly be more extensive, in the last analysis of those expressions, than 'accumulated indebtedness,' but 'accumulated indebtedness' can not be more extensive than the aggregate of the indebtedness which is due and that which is past due. And consequently a tax for the purpose of paying 'accumulated indebtedness' is provided for exclusively under subsection 1 of section 513 of the Civil Code; and it follows that a tax for the purpose of paying accumulated indebtedness, as allowed under section 507 of the Civil Code, can not be lawfully levied under item 9 of section 513, which authorizes a levy 'to pay any other lawful charge against the county.' "

Counsel for plaintiff in error insist that "there is another reason why the Leverett and McLendon obligations were not taxable under any head in 1923. Under section 411 of the Civil Code a

claim against a county, to be enforceable, must be made within twelve months from the time of the accrual of the obligation for which the claim was made. . . In other words, in 1923 both of these claims were barred and were not legally taxable under any head." As warrants had been issued to each of these parties, under the holding in *Jackson Banking Co.* v. *Gaston,* 149 *Ga.* 31 (99 S. E. 30), there is no merit in this contention. The record in that case shows that the petition was filed in September, 1915, praying that the sole commissioner of Butts County be compelled by mandamus to pay county warrants issued in 1906, and which were held by the bank. In the statement of facts we find that "the defendant interposed a demurrer based on the ground that the petition set out no cause of action, and showed on its face that it was barred and that the 'claim' had not been presented within twelve months." The Supreme Court held: "The suit was not barred by the statute of limitations, which begins to run only when demand for payment is repudiated or from the time when a fund out of which the warrants can be paid is provided. *Justices* v. *Orr,* 12 *Ga.* 137, 141; Barnes v. Turner, 10 L. R. A. (N. S.) 478 (14 Okla. 284, 78 Pac. 108, 2 Ann. Cas. 391). County warrants are not such 'claims' as are required to be presented within twelve months after they accrue or become payable, as required by the Civil Code, § 411. *Dement* v. *DeKalb County,* 97 *Ga.* 733, 735 (25 S. E. 382) ; *Butts County* v. *Wright,* 136 *Ga.* 697 (71 S. E. 1046)."

While there may be some slight errors in the ruling of the auditor, they are not of such materiality as to affect his general findings. The judge of the superior court did not err in refusing to rerefer the case to the auditor, nor in "overruling and disallowing all of the exceptions of fact and all exceptions of law as amended," nor "in making the findings of the auditor the judgment and decree of the court."

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*